[Civ. No. 11538.   First Dist., Div. One.   July 23, 1941.]

PHILLIP B. HERNANDEZ, Respondent, v. WALTER P. MURPHY et al., Appellants.

Charles V. Barfield for Appellants.

Louis Oneal, Maurice J. Rankin and Duncan Oneal for Respondent.

PETERS, P. J.—Defendants appeal from a judgment for $5,000 in favor of plaintiff, rendered in an action brought by plaintiff for the death of his fifteen-year-old son, Jackie Hernandez, alleged to have been caused by the negligence of defendants. Defendants urge that the evidence is insufficient, as a matter of law, to show that they were negligent; that the evidence shows, as a matter of law, that Jackie was guilty of contributory negligence, and that the trial court erred in the giving of certain instructions.

So far as the questions of defendants' negligence and Jackie's contributory negligence are concerned, there was a direct conflict in the evidence. Under such circumstances, in reviewing the evidence, all conflicts must be resolved in favor of respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict, if possible. As was said in *Crawford* v. *Southern Pacific Co.*, 3 Cal. (2d) 427 [45 Pac. (2d) 183], at p. 429: "It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Treadwell* v. *Nickel*, 194 Cal. 243 [228 Pac. 25]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157]; *Wing* v. *Kishi*, 92 Cal. App. 495 [268 Pac. 483].)' To establish the defense of contributory negligence as against the verdict of a jury, the evidence must be such that the appellate court can say that there is no substantial conflict on the facts, and that from the facts reasonable men can draw but one inference, which inference points unerringly to the negligence of the plaintiff proximately contributing to his own injury." (See, also, *Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal. (2d) 1 [47 Pac. (2d) 462]; *Raggio* v. *Mallory*, 10 Cal. (2d) 723 [76 Pac. (2d) 660].)

■ Keeping these well-settled rules in mind, we turn to a review of the evidence.

The accident in which Jackie met his death occurred on the afternoon of December 6, 1938, in front of the Willow Grove Grammar School in San Benito County. Plaintiff, the father of Jackie, was employed as foreman on the Paicines Ranch, which is located about two miles from the school. The ranch is owned by defendant Paicines Company, and its stock is entirely owned by defendant Walter P. Murphy. Defendant Lester Wilson was, on December 6, 1938, an employee of defendants.

Plaintiff testified that when he was employed by John Sutton, superintendent of the ranch, in November, 1937, one of the terms of his contract of employment was that the

ranch company was to furnish transportation to convey the children of the employees to school. Defendant Murphy denied that such transportation was furnished as part of the contract of employment, contending that it was a mere accommodation to the employees. This, as well as all other conflicts, must be resolved in favor of respondent. It is conceded that the ranch company did provide a 1924 or 1925 Ford truck for the purpose of transporting the children to the school. This automobile is a truck model with a covered body, with benches placed lengthwise in the body of the truck designed as seats for the children. There was a tailgate at the rear of the truck body, and outside the body at the rear was one step used by the children in boarding the bus. The truck was also used for general ranch purposes, and had no connection with the school authorities. Defendant Lester Wilson customarily drove the children to school and called for them after school.

On the day in question, Wilson drove the truck to the schoolhouse for the purpose of picking up the children. One child was already in the truck, having been picked up at the store some distance from the school. Jackie attempted to board the bus while it was in motion. Although there is a direct conflict in the evidence, there is substantial evidence to the effect that, just before Jackie boarded the bus, the driver slowed down; that Jackie succeeded in getting into the body of the truck; that he was standing upright holding to the brackets which support the top, when the driver looked back and speeded up; that the resulting jerk threw Jackie backwards so that his feet hit the tailboard, which was up, with the result that he was catapulted to the ground. He sustained a basal fracture of the skull, from which he died within a few hours.

Defendants argue that there was no evidence at all that the bus was operated in a negligent fashion at the time of the injury. This argument is predicated on the basic premise that the evidence, reasonably interpreted, will bear no other construction but that defendant Wilson was driving along at ten miles an hour and was not aware of the fact that Jackie was running after the bus, or that Jackie had in fact boarded it. An examination of the record demonstrates that this basic premise is contrary to the evidence. It is true that defendant Wilson denied unequivocally that he saw Jackie and

another boy, Peter Gomez, chasing the bus, and that he was equally positive in his denial that he knew that decedent had reached the bus and had succeeded in getting on it. He testified that, as he was proceeding down the road near the schoolhouse, Jackie called to him to come over to pick him up; that he did not see Jackie and Peter Gomez chase the bus; that he at no time turned his head to look back through the body of the truck; that he did not speed up when he passed the two boys; that he was driving at ten miles an hour and never changed his speed. It should also be noted that he was asked whether the bus was equipped with a rear-view mirror, and that he stated that it was not, and that no objection was made by appellants to that question. He was also asked as to whether, before the accident, he "had had some difficulty in keeping the children from getting on and off before the car stopped," to which he replied, "At times they was a little reckless on it. Not so bad as you would think—a bunch of children, you know—of course, they had been in school all day and they would be naturally a little bit reckless when they would get out but I never had any trouble with the children at all." He was then asked: "And the children sometimes would get on the bus before you would stop?", to which he answered: "Yes, sir." He then attempted to qualify his answer by stating that on prior occasions the bus was "just barely moving if they ever did get on before"; that the children had not boarded the bus while he was "going at any dangerous speed"; that if they had boarded the bus on prior occasions while the bus was in motion "it was going very slow", and finally stated that he could not "remember" that the children, on prior occasions, had boarded the bus while it was in motion. The jury was entitled to pass upon this conflict in the witness' testimony. It should also be mentioned that the superintendent of the ranch, John Sutton, testified that prior to the date of the accident he had reprimanded the driver of the bus for permitting the children to alight therefrom while it was in motion, and that he had also suggested that a door should be put on the back of the bus to protect the children, but that this was not done. Wilson denied that he had ever participated in such a conversation with Sutton.

On behalf of plaintiff, various eyewitnesses of the accident were called. They flatly contradicted Wilson in many re-

spects. Peter Gomez, who was with Jackie just before the accident, testified that they were on the opposite side of the road from that testified to by Wilson; that when the bus passed he yelled at the driver; that the driver slowed up; that he and Jackie ran after the bus; that Jackie could run faster than he could and caught the bus after running about thirty feet; that Jackie got inside the bus and was standing up holding to the top when the driver started up faster; that the tailboard was up (Wilson had testified it was down); that when the bus started up Jackie tripped over the tailboard · and was thrown out. It is true that there are some conflicts in this witness' testimony, and that part of his testimony is in conflict with a statement written by a representative of the appellants and signed by Peter, but those conflicts were for the jury.

Henrietta Valdez was another student who saw the accident. She testified that Jackie and Peter ran after the bus and that ''Jackie got on it and he was holding on the top there when the bus driver looked back, like that, and then he speeded up . . . and Jackie fell off . . . '' On cross-examination she was very positive that Jackie succeeded in boarding the bus, and estimated that, before Jackie was thrown out, the bus traveled about twelve feet. She repeated her testimony that, just before he fell, Jackie was standing in the body of the bus holding onto the roof of the bus, and was then asked: ''Was that when the bus driver looked around?'' She replied: ''Yes, that's when Mr. Wilson looked around, like that, like he was going to play with him and that's when he speeded up.'' Other evidence of the same nature on the same general subject matter was introduced. It is true that other eyewitnesses produced by defendants did not notice the driver speed up, did not notice Wilson turn around, and testified that Jackie fell trying to get onto the step and that he did not get into the bus. Most of these witnesses were children whose parents were employed at the Paicines Ranch, a factor the jury could consider in weighing their testimony. All of these conflicts were for the jury.

From the evidence and reasonable inferences therefrom the jury was entitled to believe that the driver Wilson knew that the children customarily chased the bus and boarded it while it was in motion; that he saw Jackie and Peter on the day in question; that he knew, or should have known, that the

two boys were chasing the bus; that he slowed down; that Jackie succeeded in boarding the bus and was standing up inside the body facing the driver and holding to the brackets on the roof; that Wilson turned around and saw Jackie standing there and playfully speeded up; that as a result Jackie was thrown backward and stumbled over the tailgate and was killed. On such a statement of facts it hardly seems necessary to cite authority that the implied findings of the jury to the effect that defendants were guilty of negligence and Jackie was free from contributory negligence are amply supported by the evidence. ■ It must be remembered that in this case we are dealing with a fifteen-year-old grammar school boy, and not with an adult. A child of immature years is expected to exercise only such care as pertains to childhood, and all persons dealing with such a child are chargeable with such knowledge. As a result, one dealing with children is bound to exercise a greater amount of caution than he would were he dealing with an adult. (See cases collected 19 Cal. Jur., p. 623; 45 C. J., p. 702.) ■ The failure to exercise due care in ·the present case is obvious. In the first place, whether the driver's slowing down constituted an invitation to Jackie to get on the bus was a question of fact for the jury. (*Starkey* v. *Market Street Ry. Co.,* 90 Cal. App. 249 [265 Pac. 839] ; *Morrissey* v. *San Francisco,* 104 Cal. App. 536 [286 Pac. 433] ; *Hart* v. *Fresno Traction Co.,* 175 ·Cal. 489 [167 Pac. 885].) In the second place, whatever Wilson's duty toward Jackie may have been prior to the time he got on the bus, whether or not he knew or should have known or anticipated that Jackie would attempt to board the moving bus, there can be no doubt that after Jackie got on the bus and the driver knew it, he owed Jackie a duty of reasonable care. To speed up without giving the boy warning, and before the boy was seated, under the circumstances disclosed by the record, was clearly a violation of that duty. (See, generally, *Shannon* v. *Central-Gaither U. School Dist.,* 133 Cal. App. 124 [23 Pac. (2d) 769] ; *Brizzolari* v. *Market St. Ry. Co.,* 7 Cal. App. (2d) 246 [46 Pac. (2d) 783] ; *Anderson* v. *Walters,* 135 Cal. App. 380 [27 Pac. (2d) 100] ; *Wynn* v. *Gandy,* 170 Va. 590 [197 S. E. 527] ; *Vest* v. *Chesapeake & O. Ry. Co.,* 117 W. Va. 457 [187 S. E. 358].)

■ It is also quite clear that whether Jackie was guilty of contributory negligence was a question of fact for the

jury. Certainly, it cannot be said that just because he boarded a moving bus he was guilty of contributory negligence as a matter of law. The cases are quite uniform to the effect that whether a person, even an adult, who attempts to board a moving vehicle while it is in motion is guilty of contributory negligence is generally a question of fact. (*Hart* v. *Fresno Traction Co., supra*; *Morrissey* v. *San Francisco, supra.*) In the present case, there was evidence that Jackie had succeeded in getting on the bus before he fell. Even if it were contributory negligence to attempt to board the bus while it was in motion, the jury could have determined that such negligence was not the proximate cause of the injury. Proximate cause normally is a question of fact for the jury.

█ Defendants next object to four instructions given by the trial court. The first of these is designated as instruction 23 and is as follows:

"Section 674 of the Vehicle Code in effect at the time of this accident, provided as follows: 'Mirrors. Any motor vehicle which is so constructed or loaded as to obstruct the driver's view to the rear thereof from the driver's position, shall be equipped with a mirror so located as to reflect to the driver a view of the highway for a distance of at least two hundred feet to the rear of such vehicle.'

"I instruct you that the failure to use reasonable care to comply with this provision of the law would be negligence as a matter of law. (Requested by plaintiff and given by the Court as modified.)"

Defendants concede that the bus was not equipped with a rear-view mirror. Both Sutton, the ranch superintendent, and defendant Wilson so testified, without objection. Their main objection to the instruction is, that it was improper to instruct on that subject because the absence of the mirror was not expressly made an issue in the pleadings. It is well-settled that inadequacy of equipment of a motor vehicle can be established and is in issue under a general allegation of negligent operation. (*Carnahan* v. *Motor Transit Co.*, 65 Cal. App. 402 [224 Pac. 143]; *Henry* v. *Lingsweiler*, 81 Cal. App. 142 [253 Pac. 357]; *Vedder* v. *Bireley*, 92 Cal. App. 52 [267 Pac. 724].) In *Del Carlo* v. *Oberti*, 2 Cal. App. (2d) 304, [37 Pac. (2d) 1050], relied upon by defendants, the court held that the giving of a similar instruction was not reversible error. In the Oberti case the above three cases were not

mentioned, nor was the well-settled principle set forth therein discussed by the court.

It will be noted that the instruction does not state that such negligence must have been a proximate cause of the injury before the jury could base its verdict thereon. Defendants do not object to the instruction on this ground, doubtless because this was covered in detail by several other instructions.

■ Defendants also contend that, under the facts, the instruction was not applicable because there is no evidence that the truck was so constructed or loaded as to obstruct the driver's view to the rear, and, secondly, that in no event was the statute passed for the benefit of those riding in a motor vehicle. These contentions are without merit. The jury was taken to view the bus. They could ascertain for themselves whether a rear-view mirror was reasonably necessary. If the driver's view was not obstructed, as defined in the instruction, we must assume that the jury followed the instruction and found it inapplicable. The instruction quoted the code section *verbatim.* It expressly told the jury that such mirror was required so as ''to reflect to the driver a view of the highway for the distance of at least two hundred feet to the rear of such vehicle.'' The jury was not told that the mirror was required for the benefit of anyone in the body of the bus. Obviously, the instruction was submitted on the theory that, had the bus been equipped with a mirror, and had Wilson been exercising that degree of care required under the circumstances, he would have seen Jackie and Peter chasing the bus. On this theory the instruction was properly given.

■ The defendants also object to instruction 18 which reads as follows:

''I instruct you that it is ordinarily necessary to exercise a greater amount of care for the protection and safety of young children than for an adult person who possesses normal and mature faculties. One should anticipate thoughtlessness and implusiveness in the conduct of a young child. Hence, I instruct you that it was the duty of the driver of this school bus to exercise a greater amount of care for the protection and safety of the children whom he undertook to carry, than he would have been required to exercise if he had been carrying adult persons of normal and mature faculties. It was the duty of the defendant, Lester Wilson, as the driver of such bus, to anticipate such thoughtlessness and impulsiveness in the conduct of the children, as is customary with normal chil-

dren of the same age, including said Jackie Hernandez. (Requested by plaintiff and given by the Court as modified.)''

Defendants contend that the instruction erroneously assumes that Jackie did not possess mature faculties, and that his conduct was thoughtless and impulsive. These criticisms are unwarranted. The instruction contained a statement of the general rule applicable to the duty of an adult toward a child. Reasonably interpreted, the instruction did not tell the jury that Jackie did not possess normal faculties or that he was impulsive and thoughtless. It simply told the jury that it was the driver's duty to anticipate such conduct as is normal from children of the age of Jackie. That is a correct statement of the law. (*Brizzolari* v. *Market St. Ry. Co.*, *supra;* see, also, cases collected 19 Cal. Jur., p. 623.) The jury was several times instructed that Jackie was required to exercise that degree of care which is ordinarily exercised by children of his age, mental capacity and discretion.

■■ Defendants also object to two instructions on contributory negligence, designated as instructions 32 and 33. They read as follows:

''Children, the same as adults, are required to exercise ordinary care, but the ordinary care which a child of limited judgment and experience is called upon to exercise in a given situation, is not the *quantum* of care required of an adult under the same circumstances. A child is required to exercise only that measure of care which a child of the same age and under similar circumstances ordinarily exercises.

''Hence, I instruct you that Jackie Hernandez was only required to exercise the same amount of care that an ordinary boy of his age would have exercised under similar circumstances. (Requested by plaintiff and given by the Court as modified.)''

''I instruct you that a boy of fifteen years of age would not be expected to use that amount of judgment and discretion which would be expected and required of an adult. (Requested by plaintiff and given by the Court as modified.)''

These instructions are identical in legal effect to instruction 35 given at the request of defendants. Moreover, all three instructions correctly state the law. (In addition to cases already cited, see *Bowdoin* v. *Southern Pacific Co.*, 178 Cal.

634 [174 Pac. 664] ; *Mudrick* v. *Market Street Ry. Co.*, 11 Cal. (2d) 724 [81 Pac. (2d) 950, 118 A. L. R. 533].)

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.