[Civ. No. 17032.   Second Dist., Div. One.   Aug. 15, 1949.]

MARTIN O. SMYTHE, a Minor, etc., Respondent, v. DANIEL V. SCHACHT et al., Appellants.

Sam Shayon for Appellants.

Clayton B. Thomas for Respondent.

WHITE, P. J.—This action was instituted on behalf of Martin O. Smythe, 10-year-old son of his guardian *ad litem,* for damages predicated upon injuries allegedly sustained by said minor child as a result of his being attacked and bitten by a German shepherd dog belonging to defendants.

The first cause of action in plaintiffs' complaint was based upon claimed negligence of defendants and the second cause of action was founded upon the so-called "Dog Bite Statute" (1 Deering's Gen. Laws, Act 384a; Stats. 1931, p. 1095.)

The second cause of action, among other things, alleged that

"said minor child was in and on the private residence property of defendants upon the invitation of defendants."

Following trial without a jury the court made its findings of fact, conclusions of law, and entered judgment against plaintiffs on the first cause of action based on negligence, but awarded the minor plaintiff the sum of $1,500 on the second cause of action predicated on the foregoing statute. From such judgment defendants prosecute this appeal.

■ In view of appellants' contention that the evidence is insufficient to support the findings and judgment it becomes necessary to set forth the evidence. This we are required to do in a light most favorable to respondents. The factual background which gave rise to this action may be thus epitomized: Appellants, husband and wife, own their home in the city of Los Angeles. Their garage is located at the rear of the lot. Immediately adjoining the garage is a fenced-in enclosure or kennel with a fence about 5 feet high with a door leading from the enclosure into the garage. Within this enclosure appellants kept two German shepherd dogs, one a puppy 5 months old, and the other called Roguey, the animal involved in this case, and which dog was 3 years old at the time involved in this litigation.

The appellants have five children ranging in ages from 2½ to 17 years. One of such children, Walter, was 10 years old, the same age as the minor respondent herein, and had been a playmate of the latter for some considerable time. Both of the foregoing dogs were owned and kept by appellants since the animals were born.

The occurrence here in question happened on September 11, 1947. It appears from the record that appellant Mrs. Schacht and four of her children, including Walter, respondent's playmate, had been away on vacation since July 5, 1947. On the morning of September 11th, appellant husband and his oldest son Richard went to the railroad station in the family station wagon to meet the returning members of the family, and about 9 a.m. brought them to the family residence. He drove the station wagon up the driveway on the left side of the house and stopped a few feet in front of the garage to discharge the family and unload the baggage. Appellant husband then opened the garage doors and released the two dogs for the purpose of "greeting the whole family."

Some five minutes later the minor respondent proceeded up the driveway on his bicycle, dismounted and joined in greet-

ing the family and particularly his playmate, Walter. Appellant Daniel V. Schacht greeted the boy. Shortly thereafter, all of the Schacht family with the exception of appellant husband went into the house leaving the latter outside to care for the baggage. Respondent minor also remained in the yard and began playing with the dogs.

As to what thereafter transpired while he was playing with the older dog, Roguey, the minor respondent testified:

"Q. And then just tell the court, Martin, what happened? A. Well, I was holding his head, looking at his markings, and he jumped up and bit me.

"Q. And were you patting his head at all? A. Yes.

"Q. And did he growl before he jumped up? A. I didn't hear him growl. I just heard him and he lunged at me.

"Q. He made a lunge at you. How were you standing? A. I was crouched.

"Q. Kind of crouched down? A. Yes.

"Q. And it was then that Roguey lunged at you? A. Yes.

"Q. And when he lunged at you was he on all four legs or did he get up on his hind legs? A. He had his two front paws on my face and his mouth on my—in the middle of my face, and his back paws on the ground.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The Witness: He had it like this. (Indicating.) He had it came at me.

"Mr. Thomas: For the record may we indicate that the boy is holding both lower portions and sides of his face with his hand.

"The Court: Making a motion which would indicate that the front part of the face was actually in the mouth of the dog."

Appellant Mr. Schacht testified that the minor respondent was "playing with the dogs" and

"Q. And did anything particular attract your attention to Martin or the dogs? A. Yes.

"Q. What did you hear or see? A. Well, I heard the dog growl and that brought my attention to them and I looked, I turned around.

"Q. And what did you see? A. I saw Martin has his back towards me, and I saw his hands outstretched, and the fore part of the dog's face or shoulders, in that general vicinity, and the dog had put his paws up against Martin's face.

"Q. Was Martin standing erect when you turned around, or was he bent over? A. No, he was in a crouch."

There is some conflict in the evidence as to exactly how the boy was injured but that his injuries were occasioned by the dog's either biting or scratching him is manifest. There was testimony that on five previous occasions the minor respondent had been bitten by other dogs.

That there were some inconsistencies and discrepancies in the testimony of the minor respondent and his mother must be conceded. However, it is within the province of the trier of fact to resolve conflicts in evidence whether the conflict is between witnesses on one side or on opposite sides. Hence, this court will not disturb a finding where there is any substantial evidence supporting it, even though there is a conflict in the evidence produced by the prevailing party. A reviewing court may not deem as unworthy of belief evidence which a trial court, having seen the parties and observed their demeanor and manner as witnesses has accepted.

The so-called Dog Bite Statute, *supra*, insofar as here pertinent provides as follows: ''The owner of any dog which shall bite any person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of such dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness. A person is lawfully upon the private property of such owner within the meaning of this act when he is on such property in the performance of any duty imposed upon him by the laws of this state or by the laws or postal regulations of the United States of America, or when he is on such property upon the invitation, expressed or implied, of the owner thereof.''

Appellants first earnestly urge that the findings of fact are unsupported by the evidence which they assert shows, as a matter of law, that the minor respondent was not on the premises upon their express or implied invitation.

That the minor respondent in the instant case was upon appellants' property with their implied invitation seems irrefutable. The evidence is without conflict, that on frequent occasions, prior to the departure of certain of appellants' family on vacation, the minor respondent had visited in the home and upon the premises of the former. In this connection appellants in their brief state, ''On all of these prior occasions it could be said that he had been invited expressly or impliedly *and on all of said prior occasions he entered the premises to play with the infant children of the defendants by the regu-*

*lar and customary means of access provided, through a door
or porch entrance on the south side of the house.''*

That on the occasion of his injury the minor respondent
used the driveway on the north side of the house instead of
entering through a door or porch on the south side is unim-
portant. And appellants fail to point out any evidence dis-
tinguishing the character of the previous invitations from that
extended on the day of the injury. The question is, was minor
respondent lawfully upon the property of the dog owners at
the point where the injury occurred? We are satisfied that
he was.

Appellant Mr. Schacht testified that he had known respond-
ent minor for approximately a year and a half. That the lat-
ter was a playmate of one or more of the former's children,
that prior to the date of injury he had seen the minor re-
spondent at the Schacht home ''quite frequently . . . well,
three, four times a week, perhaps.'' With reference to the
visit of the minor respondent on the morning of the injury,
appellant Mr. Schacht testified as follows:

''Q. Did Martin Smythe, the boy involved in this case,
come to your home that morning? A. Yes, sir.

''Q. About how soon after you drove to the rear of your
home and came to a stop in your car? A. Approximately five
minutes.

''Q. And where was he when you first saw him? A. Coming
into the driveway on his bicycle.

''Q. He rode the bike in, did he? A. Yes, sir.

''Q. And did you exchange greetings or say something to
each other? A. Well, I imagine we greeted one another.

''Q. Do you recall what was said, approximately? A. 'Hello,
Martin.'

''Q. What did he say to you? A. 'Hello.'

''Q. Was anything further said at that time? A. No, ex-
cept that he did greet Walter and Walter greeted him.

''Q. Walter was outside at that time? A. Yes, out in the
yard.

. . . . . . . . . . . . . .

''Q. A lot of children come to your house a lot of times,
don't they? A. Yes. All my children have playmates and
they all visit the house.

''Q. And you have had at regular intervals during that
time various meetings in connection with the activities of the
children? A. Yes.''

The case of *Fullerton* v. *Conan*, 87 Cal.App.2d 354 [197 P.2d 59], is of little if any comfort to appellants. In the cited case the evidence clearly showed that the injured minor made an excursion beyond the limits of the invitation extended her and her mother. No such situation is here involved. No restriction or limitation either by word or conduct had ever been placed upon the use, visitations and enjoyment of the premises here in question by the minor respondent, nor is there any showing that said minor entered upon the premises or any part thereof without observing the customary formalities of a social visit. (*Fullerton* v. *Conan, supra.*)

In section 167 of the Restatement of Torts, comment d, we find the following statement: "*Consent by conduct from relationship or by custom.* The possessor's conduct, whether of act or omission, may constitute consent. Thus, the possessor's failure to object to a particular entry, or his acquiescence in similar entries on previous occasions, may lead the actor reasonably to believe that the possessor is willing that he shall enter the land . . . Consent to enter on land in the possession of another may be derived from the relationship of the parties, as in the case of intimate friends or social or business visitors . . .*" (Emphasis added.)

Under the facts present in the case at bar we are persuaded that the finding of the trial court that the minor respondent was lawfully upon appellants' property at the point where the injury occurred is amply supported by the evidence.

Appellants next insist that as a matter of law, the evidence in the case amply supports the conclusion that the infant plaintiff failed to exercise ordinary care and caution, that his own acts contributed to his injuries and that his injuries were caused and provoked by his own misconduct. That therefore, the findings of fact to the contrary are erroneous.

In these contentions appellants cannot be sustained. We entertain no doubt that in adopting the statute here in question the Legislature did not intend to make the liability of the owner absolute and render inoperative certain principles of law such as assumption of risk or wilfully inviting injury, which over a long period of time have been established in our system of jurisprudence. While the Dog Bite Statute does not found the liability on negligence, good morals and sound reasoning dictate that if a person lawfully upon the portion of another's property where the biting occurred

should kick, tease, or otherwise provoke the dog, the law should and would recognize the defense that the injured person by his conduct invited injury and therefore, assumed the risk thereof.

In volume 3 Corpus Juris Secundum, page 1254, it is said: ''Contributory negligence will defeat recovery in an action for injuries caused by a domestic animal where negligence is the gist of the action; but, where it is not, more than ordinary contributory negligence is necessary to relieve the defendant from liability.''

And on page 1255 we find the following: ''It must be established that the injury is attributable not to the keeping of the animal but to the injured party's voluntary act in putting himself in a way to be hurt, knowing the probable consequences thereof so that he may fairly be deemed to have brought the injury on himself; but if this is shown recovery will be defeated.''

The doctrine of assumption of risk presupposes the existence of a dangerous situation or condition known to, or which reasonably should have been known to the injured party, who nevertheless chooses to enter upon or to remain within the area of risk. Respondent minor herein was required to exercise that degree of care which is ordinarily exercised by children of his age (10 years), mental capacity and discretion. (*Hernandez* v. *Murphy*, 46 Cal.App.2d 201, 211 [115 P.2d 565].) We are not prepared to agree with appellants' contention that because the minor respondent had been bitten by other dogs on five previous occasions it must be held as a matter of law that such experiences should have warned him ''that dogs were potentially dangerous aside from warning him not to pat, handle and touch them and crouch down with his face close to the dog's face.'' In view of appellants' own evidence and contention that the dog here in question had never manifested any ferocious tendencies it is difficult to follow their argument that the minor respondent was expected to anticipate a danger that the dog in question had malice in his heart and mayhem in his teeth. The record is totally barren of any evidence that the minor respondent did anything to provoke the animal or to put himself in a way to be hurt, thereby warranting the reasonable inference that by his conduct he invited the injuries and thereby assumed the risk. The doctrine of assumption of risk is surrounded by the stringent boundary that, before an appellate court can say that as a matter of law a party assumed the risk from which the injury ensued, the

evidence must be without substantial conflict in reference to the matter of knowledge or means of knowledge of the existing danger, or that such danger was obvious. No such situation is here present.

Finally, appellants vigorously contend that in the light of the evidence in this case the damages awarded in the sum of $1,500 are excessive.

The rule in this regard is thus stated in *Hallinan* v. *Prindle,* 17 Cal.App.2d 656, 671, 672 [62 P.2d 1075] : " 'A finding of value or the amount of damages is ordinarily so much a matter within the exclusive province of the jury that it will not be disturbed by the reviewing court, and this is especially true where the verdict has been approved by the trial court.' (4 Cor.Jur., Appeal and Error, sec. 2846, p. 869.) This general rule has long been followed in this state. (*Bartlett* v. *Hogden,* 3 Cal. 55 ; *Douglas* v. *Berlin Dye Works & Laundry Co.,* 169 Cal. 28 [145 P. 535].)

''The power of the appellate court to reduce or reverse judgments on the ground that they are excessive exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush passion, prejudice or corruption on the part of the jury. (*Bond* v. *United R. Co.,* 159 Cal. 270 [113 P. 366, Ann.Cas. 1912C 50, 48 L.R.A.N.S. 687] ; *Hale* v. *San Bernardino etc. Co.,* 156 Cal. 713 [106 P. 83] ; *Diller* v. *Northern Cal. Power Co.,* 162 Cal. 531 [123 P. 359, Ann.Cas. 1913D 908] ; *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 P. 513] ; *Swain* v. *Fourteenth Street R. R. Co.,* 93 Cal. 179 [28 P. 829] ; *Lynch* v. *Southern Pac. Co.,* 24 Cal. App. 108 [140 P. 298].) Subject to this limitation the damage resulting from pain, suffering or injuries of the nature of that here complained of, being incapable of exact measurement, its compensation in terms of money is necessarily only approximate, and must be left to the jury to determine.''

In other words, it is not a question of what damages this court would award or whether we consider them high, but whether this court can say that the damages are so excessive as to suggest passion or prejudice.

There was testimony in the record that the minor respondent, a child 10 years old, was attacked by a German shepherd dog weighing approximately 60 pounds ; the dog bit the boy in the face, in the eyelids, and on the chin, knocking him to the ground in the attack ; the dog scratched the top of the right eye of the minor resulting in scars which still remained at the

time of the trial, one on the right side of the face about 2 inches long and consisting of four separate and distinct parallel lines on the face; a scar on the left side of the face near the eye, consisting of a series of parallel lines about 1 inch long. Following the attack, the minor respondent's face was washed off at the home of the appellants and the appellant Mr. Schacht took the minor respondent to the latter's home. His mother then took the boy to Santa Fe Hospital where he was given a local anaesthetic. The gashes in his face were closed with four sutures on his left cheek and two sutures on the right. The boy was very much exhausted and was taken to his home by his mother after having received surgical care at the hospital. The attack occurred on a Thursday or Friday and the boy returned to school the following Monday. However, he was given continued medical attention, including rabies shots, and treatment for the purpose of loosening the skin at the outer point of the right eye where the skin was tightening. The medical treatment continued from September 11th to November 14th. The minor respondent's mother was an experienced nurse and was able herself to furnish some of the massage and general care required for her son's treatment. There was testimony that the boy suffered from nightmares following the attack, awakened at night and cried out in his sleep. His tendency to stutter when speaking was aggravated immediately after the accident and this condition continued for about four to six months. The right eye was closed and the boy's face quite swollen after his encounter with the dog. Both sides of his cheeks were discolored from the pressure of the dog's jaws. The swelling continued about three days and there was a hemorrhage in the right eyeball for seven or eight days. The physician who attended the boy expressed a definite opinion that the injuries to the face were the result of dog bite. It was also the opinion of this physician that the attack by the dog might well be expected to account for the nightmares, the aggravation of the tendency to stutter, nervousness, and a condition of irritability. Injury to the soft tissue at the outer end of the right eye resulted in a "dimple in the soft tissues." A physician testified definitely that the scar on the left cheek was permanent as was also the scar on the right cheek consisting of the ridging. While this physician expressed the opinion that the scars "within years . . . may be less noticeable than they are right now . . . I think they are likely to remain to a lesser degree . . ." The doctor stated that surgical treatment for the removal of the scars

was not advisable for the reason that surgical treatment would not be likely to remove them.

It is true as contended by appellants that there is testimony that an injury received by the boy when struck by a football some five days after the dog biting caused an aggravation of the condition of his left cheek and made the scar wider, but the minor's attending physician testified, "the only way that it could have affected it in any way at all would have been to delay healing very slightly and to make the scar perhaps a tiny bit wider. It did not increase the length at all." As to the evidence concerning nightmares suffered by the boy and claimed aggravation of his stuttering, the most that can be said is that a conflict existed, and this was resolved against appellants by the trier of fact. The same is true of other testimony relative to the minor respondent's condition of mind and body before and after the dog bite injury and as to the claim that the photographs taken shortly after the injury showing the condition of the boy's face after the accident "palpably showed dirt and other marks."

We think it quite clear from a reading of the record that it may not be said that the judgment of the court indicates at first blush or at all that the trial judge was influenced by passion or prejudice in the amount of damages awarded.

The judgment is affirmed.

Drapeau, J., concurred.

Doran, J., dissented.

A petition for a rehearing was denied August 31, 1949, and appellants' petition for a hearing by the Supreme Court was denied October 13, 1949.