[Civ. No. 15544. First Dist., Div. One. Sept. 11, 1953.]

VERNON ROSS, a Minor etc., et al., Appellants, v. SAN FRANCISCO UNIFIED SCHOOL DISTRICT, Respondent.

Jack Flinn and Jackson E. Nichols for Appellants.

Dion R. Holm, City Attorney, and Edward F. Dullea, Deputy City Attorney, for Respondent.

PETERS, P. J.—Plaintiffs, Vernon Ross, a junior high school student, and his father, brought this action against defendant, the school district, for damages for the loss of an eye by Vernon alleged to have been proximately caused by the defendant's negligent maintenance of and supervision over a buffing machine. At the close of plaintiffs' case before a jury, defendant's motion for a nonsuit was granted, and judgment entered for defendant. The sole ground of the motion, and of the order granting it, was that the evidence demonstrated that Vernon was guilty of contributory negligence as a matter of law. Plaintiffs appeal.

On such an appeal the judgment of nonsuit can be supported only if " 'disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' " (*Andre* v. *Allynn*, 84 Cal.App.2d 347, 348 [190 P.2d 949], quoting from *Card* v. *Boms*, 210 Cal. 200 at p. 202 [291 P. 190].)

There is no dispute but that there was sufficient evidence, tested by these standards, to go to the jury on the issue of defendant's negligent maintenance of and supervision over the buffing machine. The judgment can be sustained, if at all, upon the sole ground that Vernon was, as a matter of law, guilty of contributory negligence.

On the date of the accident, January 5, 1951, Vernon lacked about three weeks of being 16 years of age. He was then in the high 9th grade at the junior high school. This school has students in the 7th, 8th and 9th grades. It has several craft classes, in one of which—the sheet metal class —the students are taught the use of power tools, including the use of the buffing machine. This machine consists of a power-driven circular buffing wheel which revolves at high speed. Vernon had taken sheet metal shop when he was in the high 7th and low 8th, and during this period had been taught the use of the buffer. He had taken other craft classes before and after taking the sheet metal class, but in these other courses used only hand tools. In the high 9th he was taking a craft course from teacher Ferrari, who had also been his teacher in the sheet metal course. In this course he worked only on wooden articles and used only hand tools.

On January 4, 1951, Ferrari ordered Vernon, during his craft class, to go to the sheet metal shop and buff a pair of

reins belonging to Ferrari. These reins were made of circular leather about a yard long, with a buckle at one end and with silver rings at one-half inch intervals along the length of each rein. Ferrari wanted these silver rings and the buckles polished. Vernon was taken to the sheet metal shop by Ferrari, who turned on the power, and then left Vernon there alone to do the buffing. No warning was then or later given to Vernon by Ferrari or by anyone else of the danger of buffing a long pliable strap on the revolving buffer. Vernon worked for half an hour, but did not finish the job.

On January 5, 1951, the next day, Vernon, at 2 o'clock in the afternoon, went to his math class. About 10 minutes after 2 Ferrari sent a messenger to Vernon to request him to report to the crafts room where Ferrari was conducting a class. Vernon, with the permission of his math teacher, reported to Ferrari, who was then calling the roll of his class. Ferrari instructed Vernon to take the reins to the sheet metal shop and to finish the buffing job he had started the day before. Ferrari stated that he wanted to take the reins, which were his personal property, home that night. Pursuant to instructions, Vernon took the reins to the sheet metal shop. Mr. Friersen was then conducting a sheet metal class in that room. Vernon told Friersen what Ferrari wanted done, and asked permission to use the buffing machine. Such permission was granted. Friersen was then preparing to call the roll, and was standing in about the middle of the room, where the buffing machine could be easily seen by him. Vernon went over to the tool locker, where the safety goggles, used to protect the eyes while buffing, were customarily kept. He had secured goggles from that cupboard the preceding day, and on many previous occasions. On this occasion there were but two sets of goggles in the tin box where they were kept. Vernon stated that when he had taken the sheet metal course there were then more goggles available. Goggles are used while operating other machines in addition to the buffer.

On this occasion one of the available goggles was obviously broken. Vernon took the other set, went over to the buffer, laid the goggles on the nearby bench, and waited for Friersen to turn on the power after he had finished taking the roll. There was a switch on the buffer operated by a key kept by the teacher which had to be turned on before the buffer would operate. After this key switch was turned on, the student could turn the machine off or on by the operation of a flip .

switch. When Friersen finished the roll call he came over to the buffer and turned on the key switch. He asked Vernon if he had goggles and Vernon told him that he did. Friersen then left, and returned to about the middle of the room.

Before starting the buffing operation Vernon tried to put on the goggles and found that one of the ear bands was broken. The evidence is somewhat ambiguous as to whether this ear band was broken when Vernon tried to tighten it, or was broken before he tried them on. Taking the evidence most favorable to plaintiff, as we must, it must be assumed that the ear band was broken when Vernon removed the goggles from the locker.

Vernon immediately reported to Friersen that the goggles were broken. Friersen told Vernon to go to the locker and get another set. Vernon went to the locker and searched it thoroughly but could find no goggles other than the broken set he had first observed. He also looked in another locker, and into several cupboards, but could find no other goggles. He, thereupon, returned to the buffing machine and started his buffing job without goggles.

It should be here mentioned that several students in the sheet metal class also testified as to the number and condition of the available goggles. All witnesses agreed that the goggles were customarily kept in a tin box in the tool cabinet. Three witnesses stated that there were usually only two or three sets of goggles available, and two of the witnesses testified that some of the goggles were always bent and broken.

Vernon, without goggles, started to buff the silver rings on the reins. He testified that he worked for about 15 minutes before the accident occurred. Other testimony suggests that he may have worked at the buffer, before the accident, for about half an hour. No one came up to him while he was working. Friersen, when Vernon started work, was still in the middle of the room, and remained in the room at all times here involved. Vernon polished all of the silver rings on one of the reins, and was half through the other, when the accident happened. The rein upon which Vernon was then working became entangled in the buffing wheel, causing the long leather band to revolve rapidly. A sliver of the buckle flew off and pierced Vernon's left eye. He was hospitalized for a period of 15 days, during which time the sliver was removed. The eye lens of his left eye has been permanently destroyed and a traumatic cataract has formed. The sight of this eye is permanently gone. An operation to

remove the cataract, although possible, would only improve Vernon's appearance but would not improve his sight.

Vernon admitted that he knew that safety goggles should be worn while operating the buffer, and testified that, when he took the sheet metal course, he had been instructed upon safety precautions, and was given a test upon safety regulations. He admitted that he had then been instructed always to use safety goggles when he operated the buffer. He stated that, prior to the accident, he had used the buffer some 75 or 80 times, and on each occasion had worn goggles. The trial court was much impressed by this testimony and granted the nonsuit on the ground that such evidence demonstrated that Vernon was guilty of contributory negligence as a matter of law.

The above evidence would obviously support findings that the school district was guilty of negligence in its maintenance of and supervision over the buffer. The failure of the defendant to have an adequate supply of unbroken goggles on hand, the failure of Friersen to keep a watch on Vernon to see that he had found and was using goggles, the failure of Ferrari or anyone else to warn Vernon of the danger of the long flexible reins becoming enmeshed in the buffer would support findings that defendant was negligent and that such negligence was a proximate cause of the accident. It is also true that Vernon's evidence to the effect that he had been told to wear glasses and knew that they should be worn might support a finding of contributory negligence. The question is, does that evidence compel such a finding as a matter of law?

In determining this question there are certain rules of law that must be kept in mind. ■ Whether a plaintiff has been guilty of contributory negligence is normally a question of fact for the jury. (*Andre* v. *Allynn,* 84 Cal.App.2d 347 [190 P.2d 949]; *Hernandez* v. *Murphy,* 46 Cal.App.2d 201 [115 P.2d 565].) ■ Proximate cause is also normally a fact question. (*Uribe* v. *McCorkle,* 63 Cal.App.2d 61 [146 P.2d 22]; *Jones* v. *City of South San Francisco,* 96 Cal.App. 2d 427 [216 P.2d 25]; *Hernandez* v. *Murphy,* 46 Cal.App.2d 201 [115 P.2d 565]; *Taylor* v. *Oakland Scavenger Co.,* 17 Cal. 2d 594 [110 P.2d 1044].) ■ In the absence of compelled inferences of contributory negligence and proximate cause arising out of plaintiff's own evidence, the burden of proof is upon the defendant on both of these issues. (*Gett* v. *Pacific G. & E. Co.,* 192 Cal. 621 [221 P. 376]; *Bauman* v. *Edgar,*

72 Cal.App. 448 [236 P. 943]; *Anthony* v. *Hobbie,* 25 Cal.2d 814 [155 P.2d 826].)　　The barring of a plaintiff, particularly a minor, on the ground that he has been guilty of contributory negligence, as a matter of law, is a rare occurrence, and will only be done in the clearest of cases. (*Anthony* v. *Hobbie,* 25 Cal.2d 814 [155 P.2d 826]; *Andre* v. *Allynn,* 84 Cal.App.2d 347 [190 P.2d 949]; *Uribe* v. *McCorkle,* 63 Cal.App.2d 61 [146 P.2d 22]; *Lloyd* v. *Southern Pac. Co.,* 111 Cal.App.2d 626 [245 P.2d 583]; *Jansen* v. *Southern Pac. Co.,* 112 Cal.App.2d 833 [247 P.2d 581]; *Green* v. *Key System Transit Lines,* 116 Cal.App.2d 512 [253 P.2d 780]; see exhaustive annotation and collection of cases in 107 A.L.R. 4, particularly at p. 164 et seq.) In the instant case we are dealing with a minor.　　In determining whether a minor has been guilty of contributory negligence as a matter of law, a much more lenient rule in favor of the minor is applied than applies to adults. (*Foley* v. *California Horseshoe Co.,* 115 Cal. 184 [47 P. 42, 56 Am.St.Rep. 87]; *Jones* v. *Davies,* 133 Cal.App. 389 [24 P.2d 364]; *Schroeder* v. *Baumgarteker,* 202 Cal. 626 [262 P. 740]; *Shannon* v. *Central-Gaither U. School Dist.,* 133 Cal.App. 124 [23 P.2d 769].) In *Guyer* v. *Sterling Laundry Co.,* 171 Cal. 761 [154 P. 1057], this rule was applied to a girl of 19. The court stated (p. 763) : ''A girl of nineteen is still in her youth. Youth is ever the time of heedlessness, of impulsiveness, and of forgetfulness. Lacking power of continuous application and concentration, it will, upon the other hand, center its thought for a brief time and to its peril upon one matter to the exclusion of all else. Those who employ young girls and young women in and about machinery which may inflict injury are properly chargeable by the law with knowledge of these self-evident truths, and it becomes, therefore, their duty to guard youth against its own inevitable shortcomings. . . . Whether contributory negligence upon the part of plaintiff was shown, that is to say, whether, as a young girl of nineteen years of age, she did not comport herself with the care and prudence due from one of her years and experience, was strictly a question for the jury . . .''

In *Foley* v. *California Horseshoe Co.,* 115 Cal. 184 [47 P. 42, 56 Am.St.Rep. 87], the court held that a different standard applied to a boy of fourteen operating machinery than would apply to an adult, and held that even where such boy proceeded with a certain process in the face of a known danger, he was not barred, as a matter of law, because his

knowledge of the danger and the precautions that should have been taken were not inconsistent with that lack of judgment that creates the need for the special protection of children. At page 192 the court stated:

"It would be barbarous to hold them to the same accountability as is held the adult employee who is an independent free agent. Their conduct is to be judged in accordance with the limited knowledge, experience, and judgment which they possess when called upon to act. . . . .

"So here the child might well be expected to comprehend the likelihood of accident, and to know how to provide against it, when engaged in his usual employment in front of the machine. But when he is sent to the rear of it, and in among the wheels and mechanism to perform a novel duty, we cannot say, as matter of law, that he entered upon its performance with a full appreciation of the increased dangers and risks, and with sufficient judgment to know how to avoid them. These matters, and the further question whether the minor duly exercised such judgment as he possessed, must, therefore, as a rule, be left as considerations of fact for the jury's determination; and it would be an exceptional case which would present them as unmixed questions of law for the determination of the court."

█ Thus, mere knowledge of the existence of the danger will not necessarily bar a child while it might bar an adult. This was well illustrated in *Andre* v. *Allynn*, 84 Cal.App.2d 347 [190 P.2d 949], where the principles here set forth, and most of the cases here cited, are discussed at some length. In that case it was held that the temporary forgetfulness of a 16-year-old boy as to the danger of falling upon a ramp where he and others had previously slipped, did not bar him, as a matter of law, because, it was held, although the evidence showed that he knew of the danger, it did not show, as a matter of law, that he knew the amount or degree of the danger. At page 352 it is stated, quoting from *Ridge* v. *Boulder Creek etc. School Dist.*, 60 Cal.App.2d 453, 460 [140 P.2d 990] : " 'The doing of an act with appreciation of the *amount* of danger in addition to mere appreciation of the danger is necessary in order to say as a matter of law that a person is negligent.' " (See, also, *Henry* v. *Garden Grove Union H. S. Dist.*, 119 Cal.App. 638 [7 P.2d 192].) In *Mastrangelo* v. *West Side U. H. School Dist.*, 2 Cal.2d 540 [42 P.2d 634], a 16-year-old high school student was nonsuited in an action brought for his injuries received in a class chemical explosion. The boy had picked out the wrong

chemical from the shelf, failed to follow the printed instructions in the textbook, and mixed the chemicals contrary to such instructions. Nevertheless, the judgment of nonsuit was reversed, it being held that, because the teacher knew that the boy was going to perform the experiment and did not supervise him while performing it, it could not be held that the boy was guilty of contributory negligence as a matter of law.

Not in point are the cases cited by the defendant such as *Bolar* v. *Maxwell Hardware Co.*, 205 Cal. 396 [271 P. 97, 60 A.L.R. 429]. In that case a boy of 15 was held guilty of contributory negligence as a matter of law where he built a cannon, bought powder from defendant, secreted the device from his family, and was injured when he shot it off. (See, also, *Mathews* v. *City of Albany*, 36 Cal.App.2d 147 [97 P.2d 266]). In such cases the boy knew of the danger and knew of the degree of the danger. The project was conceived by the child and carried out, secretly, by him. That is not the factual situation here presented. In the instant case Vernon was doing work for school credit pursuant to instructions from his teacher. In the Mastrangelo case, *supra,* page 549, the Supreme Court distinguished such cases as follows:

"It is at once obvious that these decisions are completely distinguishable from the instant case in an important particular, namely, that they all involve voluntary acts by the children concerned. In the instant case, the particular experiment was prescribed as part of the course and the plaintiff was instructed to perform it. It is not a case, therefore, of 'the whole plan originating in his own mind,' and 'carried out secretly' with knowledge that he would be forbidden to put it into execution if discovered, as held in the Bolar case, *supra.* On the contrary, the experiment was required and was conducted openly in full view of the instructor."

██ Under the reasoning of the above entitled cases it seems quite clear that whether Vernon's actions, under the circumstances, constituted contributory negligence, or whether defendant was negligent in its maintenance of and supervision over the buffing machine or in its supervision of Vernon's actions while operating the machine, and what was the proximate cause of the accident, were fact questions that should have been left to the jury.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.