[Civ. No. 20137.   Second Dist., Div. Two.   Sept. 20, 1954.]

EVELYN J. ELLSWORTH, Respondent, v. THE ELITE
    DRY CLEANERS, DYERS AND LAUNDRY, INC. (a
    Corporation) et al., Defendants; GEORGE W. DuNAH,
    Appellant.

Eugene S. Ives for Appellant.

Roland Maxwell, Paul H. Marston and Richard W. Olson for Respondent.

FOX, J.—This is an action to recover damages for personal injuries resulting from a dog bite. Judgment was rendered against defendant DuNah, from which he appeals.

In her amended complaint against The Elite Dry Cleaners, Dyers and Laundry, Inc., a corporation, hereinafter referred to as Elite, and Does 1 to 10, plaintiff alleged that: "On or about October 26, 1951, in the City of Pasadena, the defendants were the owners and keepers of a certain vicious dog, to wit: a Doberman Pinscher named Eric, which said dog was accustomed to pursue and bite mankind." Elite filed an answer, admitting ownership of the dog. Defendant DuNah, served as Doe No. 1, filed an answer "admitting" that Elite was the owner and keeper of the dog. He denied, however, generally and specifically, all other portions of the above quoted allegations.

At the opening of the trial it was stipulated that at the time plaintiff was bitten she was employed by Elite, was on duty in the course of her employment, and had received an award through the Industrial Accident Commission under the compensation policy that Elite carried. The complaint was thereupon dismissed as to Elite on the ground of lack of jurisdiction. The trial proceeded, however, against defendant DuNah.

Elite was a closed corporation, being owned by defendant DuNah, who was vice president in charge of production, and

his two brothers. Each received an annual lump sum allowance of $1,200 to cover entertainment, small expenses and incidentals. Some four years before this incident, after a talk with his brothers, defendant DuNah decided to get a dog for their protection. He selected Eric, then approximately a year old, and paid $100 for him. He claimed this came out of his annual expense allowance. The license records of the city of Pasadena listed him as the owner of Eric, and gave his residence address. Eric was kept, however, at Elite's plant—"in the daytime he had a bed by a door that is close to" Mr. DuNah's desk . . . "out in the workroom" . . . and "was tied part of the time . . . At night he was allowed to roam in the plant . . ." Mr. DuNah testified that either he or the night watchman fed the dog. He denied he ever requested employees to feed him. Plaintiff, however, testified that upon a number of occasions, when he was going to be absent from the plant, Mr. DuNah had requested her to purchase food for the dog and to feed him, and that he gave her the money therefor. Mr. DuNah, however, testified that the corporation paid for the dog's food. He regularly took the dog for a morning walk.

Mr. DuNah testified that about two weeks after he brought Eric to the plant he "posted a notice on the time clock not to feed or pet the dog." This notice remained for "possibly two weeks." Prior, however, to biting plaintiff, Eric had bitten two people. Mr. DuNah was aware of both of these incidents.

Plaintiff had been an employee of Elite since May or June, 1951. She had been in the habit of petting Eric every day—whether he was tied or free. He was very friendly and would come up to her when he was not tied. She frequently petted him in the presence of Mr. DuNah. Neither he nor any one else ever admonished her not to pet the dog according to her testimony. There was, however, evidence to the contrary on this point.

Plaintiff checked into work at 7:30 a. m. on October 26, 1951. Although Eric was tied to his bed by a rope he was standing "right in the doorway" when she entered. Plaintiff "walked right through the door where the dog was standing" and "reached down to pet him" with her right hand (she had her purse in her left hand) when the dog jumped at her, went "Woof" and bit her in the face and on the right hand causing substantial injuries.

The court found that defendant DuNah was "the owner and keeper" of the dog, Eric.

Defendant DuNah makes three arguments in support of his plea for a reversal: (1) that the judgment against him is not supported by the issues or findings; (2) that the evidence is insufficient to support a finding that he was the owner and keeper of the dog; and (3) that plaintiff was guilty of contributory negligence as a matter of law. None of these contentions is sound.

In support of his first argument, defendant points out that when an allegation is admitted no issue is raised as to such fact and that a finding contrary to the admission is outside the issues and must be disregarded, hence, in the absence of any issue as to his owning or keeping Eric, there could be no finding which would support a judgment against him. In applying these principles to achieve this result defendant engages in a bit of synthetic reasoning: viz., that by his "admission" that the dog was owned and kept by Elite he thereby eliminated any such issue as to *his* owning and keeping the dog, hence the finding that he owned and kept Eric was outside the issues and must be disregarded; consequently the findings do not support the judgment. Defendant may not thus so easily eliminate himself from the vital issues of this case. ■ The rule that no issue is raised where an allegation is admitted is wholly inapplicable in the situation here. A defendant cannot escape the legal consequences of his own acts and conduct by "admitting" that some one else did them and is responsible therefor. That is the application of the rule for which defendant contends. The fallacy of this position is apparent.

■ Actually, however, defendants' owning and keeping Eric was put in issue by the pleadings, for plaintiff alleged that the *defendants* owned and kept the dog. The relationship of Elite and defendant DuNah to the dog was not alleged to be mutually exclusive. It will be recalled that after "admitting" Eric belonged to Elite, DuNah denied generally and specifically the other allegations of owning and keeping the dog. ■ In this connection it should be pointed out that after judgment, pleadings are to be liberally construed, and any uncertainty will be resolved, if reasonably possible, in support of the findings made by the trial court.

■ Furthermore, the case was tried upon the theory that these matters were in issue. No objection or suggestion was made in the court below that the complaint failed to state

a cause of action in these respects. Under the circumstances defendant is in no position now to claim there was no issue as to his owning and keeping Eric. The finding was responsive to this issue. It is clear, therefore, that the judgment is within the issues and is supported by the findings.

In passing on the sufficiency of the evidence to support the finding that DuNah owned and kept the dog it must be remembered that an appellate court will view the evidence in the light most favorable to the respondent; will not reweigh the evidence; and will indulge all intendments and reasonable inferences which favor sustaining the findings of the trial court. (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557].) Conflicts, of course, are to be resolved by the trier of the facts.

The evidence shows that defendant DuNah purchased Eric; that the dog's license listed him as owner, giving his residence rather than his business address; and that the ownership of the dog was never transferred to Elite. The trial judge may well have entertained doubt that the $100 paid for the dog was an item chargeable to or intended to be paid out of defendant DuNah's annual $1,200 check for entertainment and other small expenses in view of the amount and character of the expenditure and the fact that his brothers each received a check in like amount but did not join in the purchase of the dog. The personal care and attention which defendant DuNah constantly gave the dog is not without significance in support of the finding that he owned and kept Eric. Applying the above principles, the evidence is clearly ample to support the finding that he was the owner of the dog and this finding is sufficient to sustain the judgment.

In arguing this point, defendant relies on *O'Rourke* v. *Finch,* 9 Cal.App. 324 [99 P. 392], and *Smith* v. *Royer,* 181 Cal. 165 [183 P. 660]. These cases are not helpful since they were decided prior to the enactment of the so-called "Dog Bite Statute" (1 Deering's Gen. Laws, Act 384a; Stats. 1931, p. 1095) which had the effect of imposing stricter liability on the owner of a dog for such injuries.*

In support of his contention that plaintiff was guilty of contributory negligence as a matter of law, defendant cites *Smythe* v. *Schacht,* 93 Cal.App.2d 315 [209 P.2d 114]. The court pointed out in that case (p. 321) that in adopting the

---

*In 1953, the substance of this statute was incorporated in section 3342 of the Civil Code.

statute the Legislature did not intend to make the liability of the owner absolute and render inoperative such principles as assumption of risk or wilfully invited injury, which have long been established as a part of our law. The court then stated that ''While the Dog Bite Statute does not found the liability on negligence, good morals and sound reasoning dictate that if a person lawfully upon the portion of another's property where the biting occurred should kick, tease, or otherwise provoke the dog, the law should and would recognize the defense that the injured person by his conduct invited injury and therefore, assumed the risk thereof.'' Defendant argues that plaintiff by her conduct provoked the attack of the dog hence she invited the injury and assumed the risk thereof, and cannot, therefore, recover as a matter of law. Defendant is in error as to his first premise: viz., that plaintiff's conduct provoked the attack. This is a question of fact which the court impliedly determined adversely to defendant's position in its finding that plaintiff was not guilty of contributory negligence. Such determination finds support in plaintiff's testimony that she had frequently petted the dog; that he had always responded in a friendly fashion; that he was standing in the doorway through which she entered on the morning in question; that she reached down to pet him with her right hand as she went through; that he then jumped at her and bit her; and that she had not been warned previously not to pet him. Of course the notice not to feed or pet the dog which DuNah posted on the time clock soon after he purchased the dog some four years before this incident occurred could not serve as a warning to plaintiff, who had worked at Elite only five or six months, since the notice remained posted only a couple of weeks. In arguing this point defendant has fallen into the not uncommon error of relying on testimony that contradicts plaintiff's story. The trial court has resolved that conflict in plaintiff's favor. The resultant finding is, of course, binding on appeal.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied October 6, 1954.