[Civ. No. 31267.    Second Dist., Div. One.    July 11, 1967.]

JOHN BURDEN, Plaintiff and Respondent, v. NATHAN GLOBERSON, Defendant and Appellant.

Herbert Manasse for Defendant and Appellant.

Walter P. Christensen for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a money judgment for plaintiff after he was bitten and injured by defendant's dog.

Burden filed his complaint on October 26, 1961, alleging, among other things, that defendant was the owner of a certain dog of mixed breeding; that on July 10, 1961, while on defendant's premises, plaintiff was attacked and bitten by the dog; that plaintiff suffered severe injuries and the loss of a part of one finger as the proximate result of the dog attack and further suffered other damages including medical expenses and loss of earnings. The defendant answered by denying the pertinent allegations of the complaint and by affirmatively asserting that the dog was chained to a dog

house on defendant's premises and that signs on the premises advised the public at large to beware of the dog. Further it was alleged that Burden had knowledge of the dangerous propensities of the dog and assumed the risk involved by approaching the dog for the purpose of feeding him. In a second affirmative defense, defendant asserted that Burden was contributorily negligent. Trial before the court was had on March 22 and 23, 1966.

Some of the facts are as follows: For about three years prior to July 1961, Burden was engaged in operating an industrial catering truck (lunch wagon). Burden took over the business from a previous truck driver who introduced Burden to all of the customers on the route. When Burden met defendant, a customer on the route, the latter told Burden "that all the previous drivers had always left a pint of milk for his dog." When Burden first saw the dog he was chained to a dog house with a chain about 10 to 15 feet long. Burden made five calls per week to defendant's place of business and on practically each occasion for about three years had given or left a pint of milk for the dog. On the occasions when Burden poured the milk into the dog's dish or bowl, Burden would go to the area where the dog was chained, pour the milk into the dish or bowl and then leave. The dish or bowl was within the length of the dog chain. Never until July 10, 1961, had the dog bitten or attacked Burden. On a few occasions Burden was late and, in those instances, he would just leave a pint of milk on a ledge and tell defendant or one of his men.

On occasions, too, Burden left day-old sandwiches with defendant for the dog. On at least one occasion defendant asked Burden, "Have you fed Mike [the dog] yet?" At no time did Burden ever tease or provoke the dog. Burden took the milk to the bowl and poured it for the dog because it was expected of him and for no other reason.

There was a small sign on the outer fence "Beware Of Dog." Defendant had told Burden that the dog was a watchdog and was trained to keep intruders out, that the dog was vicious; however, the dog seemingly did not growl or bark when defendant, or his son, or Burden came near him.

On the morning of July 10, 1961, Burden went with a pint of milk toward the dog house and poured the milk into the dog's bowl. The dog thereupon grabbed Burden's foot and then his hand, resulting in serious injury. Burden struggled loose. Defendant was saying, "Oh, my God. Why did I keep

Mike? Why didn't I get rid of him?" While defendant was taking Burden to a hospital at Burden's request, defendant told Burden that his insurance did not cover the dog and that Burden should say that he had cut his hand on some metal.

Findings of fact and conclusions of law were made on May 16, 1966. The court found that defendant was the owner of the dog, that for about two and one-half years prior to July 10, 1961, plaintiff made daily work-day calls at defendant's premises with the catering truck and sold coffee, and so forth, to defendant and his employees and while so visiting the defendant's premises plaintiff, at the request of defendant, placed milk in a bowl for the dog. That on July 10, 1961, while pouring the milk for the dog plaintiff was bitten and subsequently lost a part of a finger, that plaintiff had medical bills of $614 and loss of income of $625 and suffered pain and discomfort to his damage in the sum of $3,261. That prior to the biting episode the dog did not in any way manifest any animosity toward plaintiff and never indicated that he would bite plaintiff. That on the occasion in question plaintiff was exercising ordinary care and caution for his own safety and that at the time of the biting did not freely and voluntarily assume the risk of being bitten by the dog. Judgment for plaintiff in the sum of $4,500 was ordered.

Appellant now asserts that there is no evidence to support the finding to the effect that Burden was requested to place the milk in the bowl for the dog, that there is no evidence to support the finding that the dog did not show any animosity toward Burden.

The record is clear that Burden was of the impression, and reasonably so, that if he wanted to continue to make the appellant's place of business as a stop for vending his foods and drinks he would be expected to provide the dog with a pint of milk every day, and Burden did so with defendant's knowledge for over two years. In other words, Burden, for good reasons, felt that he was obligated to provide for the dog or not make the stop.

With reference to the affirmative defenses of assumption of risk and contributory negligence, it is true that in spite of the language of Civil Code section 3342,[1] the men-

---

[1] Civil Code, section 3342, reads as follows:

"The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place, including the property of the owner of the dog, regardless of the former viciousness of the dog or the owner's knowledge of such

tioned defenses are available. (*Gomes* v. *Byrne*, 51 Cal.2d 418, 420 [333 P.2d 754].)

In the case at hand the judge determined from the testimony and evidence that there was no contributory negligence or assumption of the risk under the circumstances. Here, unlike the facts in *Gomes* v. *Byrne, supra,* Burden did not enter an area where the dog was barking or growling or showing any animosity toward him. Here Burden did not tease, kick, or otherwise provoke the dog nor did Burden, by any other conduct, invite the injury or the assumption of the risk.

It was a question of fact whether Burden provoked the attack. The judge impliedly by finding no contributory negligence determined that the attack was not provoked by Burden. There was conflicting testimony and the judge's determination under the circumstances is binding on this court. (See *Ellsworth* v. *Elite Dry Cleaners etc., Inc.,* 127 Cal.App.2d 479 [274 P.2d 17].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

---

viciousness. A person is lawfully upon the private property of such owner within the meaning of this section when he is on such property in the performance of any duty imposed upon him by the laws of this State or by the laws or postal regulations of the United States, or when he is on such property upon the invitation, express or implied, of the owner.''