[Civ. No. 5784. Fourth Dist. Nov. 9, 1959.]

TIMOTHY ALVARADO et al., Plaintiffs and Appellants, v. AL ANDERSON, Defendant and Appellant; PAUL A. TRAUTWEIN et al., Respondents.

Parker, Stanbury, Reese & McGee, and W. Floyd Cobb for Plaintiffs and Appellants.

C. Ransom Samuelson, Clarence Hengel and Head, Jacobs & Jacobs for Defendant and Appellant.

Harry E. Sackett, Raoul Francoeur and Henry F. Walker for Respondents.

COUGHLIN, J. pro tem.*—Action for damages arising out of the use of a diving apparatus. Judgment for plaintiffs against defendant owner and in favor of defendant repairman against plaintiffs affirmed.

The defendant Anderson operated a "Fun Zone" which adjoins Balboa Bay, in the city of Newport Beach, and maintained a diving board apparatus offshore in the bay. On July 26, 1956, the plaintiff Timothy Alvarado was injured while using this apparatus, which consisted of three sectors joined together, constructed of metal pipe, and fastened to a float; each sector formed the base for a diving board at a different height. There were three diving boards; high, medium and low. A ladder, also constructed of metal pipe, was a part of the frame work of the middle sector upon which the high diving board had been installed. This ladder furnished access to all three boards, and was located to the rear thereof; the front of the boards being the end from which a spring dive was made. At the top of the high diving board sector, and connected with the upper end of the ladder, were pipe hand rails which extended above the diving board, approximately waist high, and out toward the diving end.

The "Fun Zone" operated by Anderson consisted of the usual concessions comprising such an activity. He had installed and maintained the diving boards to attract youngsters to that area with the hope that they might patronize these concessions.

On the day before the accident Anderson learned that something was wrong with the high diving board, and thereupon caused warning signs to be hung on the ladder with string, and also telephoned the office of the defendants Trautwein Brothers to send someone over to look at the float, advising that one of the fulcrums was loose. The warning signs, which Anderson testified didn't last over 30 minutes, were crude, homemade cardboard affairs with the words, "Danger, Keep Off." Trautwein Brothers was a marine engineering concern which originally installed the diving apparatus on the float; on one occasion, a few years before, had overhauled this installation; and on other occasions had made minor repairs. A Mr. Shaver, an employee of that concern, responded to Anderson's telephone call; went to the float accompanied by an employee of Anderson; determined that a fulcrum on the high diving board was broken; removed that board; brought it to

*Assigned by Chairman of Judicial Council.

the beach; stored it against a cement wall; and told Anderson that he would have to get a new fulcrum. Shaver told Anderson's employee to tell Anderson to put a warning sign on the apparatus because, the board being removed, it would be dangerous for "kids" to climb on it. However, Anderson thereafter did not put up any warning signs or take any other precautions to prevent or supervise further use of the diving apparatus even though he knew there were a great number of youngsters in the area and that many of them were on the float. No supervisor or security officer was employed to police the area.

Three years before, a 15-year-old boy had been injured when diving from this apparatus. In describing this incident Anderson said that the boy "broke his neck diving off of that handrail the very same way everybody dove off."

On July 26, 1956, the day after Shaver removed the high board, the float was being used; several boys climbed to the top of the ladder on the diving apparatus, stood on the handrails of the high diving board sector, and dove off the back of the apparatus into the bay. The base of the diving apparatus on the ladder side was 2 to 3 feet in from the edge of the float. Anyone diving from the handrails on the top of the ladder had to project his dive over this 2 or 3 foot strip to avoid hitting the float. The plaintiff assumed a diving position on the handrails similar to that done by the other boys who preceded him, where he remained for 20 or 30 seconds, and then attempted to dive into the bay by pushing off, but, as he stated, "I didn't get any leverage . . . it was like pushing myself there but it didn't do any good," and he fell to the deck of the float sustaining serious permanent injuries.

One of the boys who previously had dived from this position, and who was on a lower sector of the diving apparatus at the time Timothy leaned forward to dive, said that the ladder and railings were not steady because of "the waves and the structure"; that the structure "wobbled"; that, on a prior occasion when he got on the structure it would go back and forth a little, it would "wiggle," and the bottom of the apparatus may have been loose, "the legs or something"; that Timothy "was just beginning to fall forward and his foot slipped and he fell."

Shortly after the accident, upon request by Anderson, Trautwein Brothers removed the float to their yard for repairs, and it was discovered that some of the decking was rotten and the fastenings were loose, allowing the pipe

standards to "wobble"; the shoring on one of the legs was "rotting and loose"; and, to a certain extent, the other legs also were loose, allowing the apparatus to "teeter back and forth."

Timothy was a strong, active, normal boy, 13 years of age, a graduate of the eighth grade, who had been swimming and diving for three years. He had used the low or medium diving boards on the afternoon of the accident. As he climbed to the top of the ladder to dive from the handrails of the high board sector he had no thought of any danger. There was no sign warning him of danger and he said that if there had been such a sign on the apparatus he would not have used it.

Timothy and his father brought this action against Anderson and Trautwein Brothers to recover damages arising out of the injuries he received. The case was tried by a jury which rendered a verdict in favor of the plaintiffs against Anderson and in favor of Trautwein Brothers against the plaintiffs. Judgment was entered accordingly. Anderson appeals from that part of the judgment against him and the plaintiffs appeal from that part of the judgment in favor of Trautwein Brothers.

The foregoing statement of facts has been compiled in accord with the well-established rule that an appellate court, in testing the sufficiency of the evidence to sustain a judgment, must accept as true that testimony and the reasonable inferences that may be drawn therefrom which support the judgment. (*Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 736 [269 P.2d 12]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140, 142 [134 P. 1157].)

In support of his appeal the defendant Anderson argues that the evidence establishes as a matter of law that Timothy exceeded the scope of his invitation, assumed the risk of any injury sustained, and was contributively negligent; also, that the trial court erred in excluding certain evidence. The sufficiency of the evidence to establish negligence on the part of Anderson proximately causing the accident, the extent of the injuries sustained as a result thereof, or the amount of damages awarded is not questioned.

"A possessor of land owes to an invitee the duty of exercising ordinary care to keep his premises in reasonably safe condition; and he will be liable for bodily harm, in the absence of an adequate warning, caused an invitee by a dangerous condition in the premises 'if he knows or should know

174

of the danger which he has no basis for believing that the invitee will discover.' . . . ■ However, it is the law that the invitor is liable only for injuries caused an invitee by a dangerous condition existing in that part of the premises which the invitee may be reasonably expected to use in the proper exercise of his invitation. . . . ■ Where an invitee enters upon portions of the premises where he has no right to be and becomes, under the particular facts, a licensee, the duty then owed him by the land occupier is to refrain from wilful or wanton injury and to exercise due care toward the licensee in the conduct of his activities at the situs. (Citing cases.) ■ The question as to the extent of the invitation is normally one of fact rather than law, encompassing such considerations as the circumstances of the invitation, the relation between the parties, the character of the premises or other locus covered by the invitation, the nature of the use which the invitee may be expected to make in accomplishing the objectives of the invitation, and the conditions or circumstances under which such use is to be made.'' (*Powell* v. *Jones,* 133 Cal.App.2d 601, 606-607 [284 P.2d 856].)

Anderson contends that although Timothy was invited to use the float and diving boards, this invitation did not extend to a use of the handrails above the high diving board as a diving platform; that the invitation was limited to a use of the diving apparatus for the purpose of diving off of the diving boards and from no other place thereon.

■ There is a ''general principle that the person in possession of premises must take such precautions for the safety of his business invitees as are reasonable under all the circumstances, considering their relation, the burden of the interference with his own affairs, and the danger to the invitees to be anticipated, and that special caution is required in behalf of invitees of immature age, whose inability to appreciate and propensity to ignore certain dangers he ought to consider . . . ■ In each case the reasonableness of the conduct under all the circumstances is for the jury.'' (*Roberts* v. *Del Monte Properties Co.,* 111 Cal.App.2d 69, 74 [243 P.2d 914].)

■ The fact that a child invitee may use equipment upon the invitor's premises for an unintended purpose, as a matter of law, does not place him in the status of trespasser or licensee and relieve the occupier of the premises of the duty to exercise reasonable care for his safety. (*Crane* v. *Smith,* 23 Cal.2d 288 [144 P.2d 356]; *Roberts* v. *Del Monte Properties*

*Co.*, 111 Cal.App.2d 69 [243 P.2d 914] ; *Kataoka* v. *May Dept. Stores Co.*, 60 Cal.App.2d 177 [140 P.2d 467].)

The manner in which the diving apparatus in question might be used for diving purposes is a question about which reasonable men might differ. The invitation to use the diving apparatus extended to whatever use for diving purposes might reasonably be expected of ordinary people under the circumstances. Such use may not be limited by the secret intention of the invitor. Whether such an invitation extends only to diving off of the diving boards or includes also diving from other portions of the apparatus is a matter for determination as a question of fact under all of the circumstances. In this case the scope of the invitation at issue was a question of fact determined by the jury's verdict.

Likewise, the evidence submitted in this matter on the defenses of assumption of risk and contributory negligence presented issues of fact and not of law. The defense of assumption of risk "is available when there has been a voluntary acceptance of a risk and such acceptance, whether express or implied, has been made with knowledge and appreciation of the risk," even though such risk arises out of a dangerous condition caused by the negligence of others. (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161-162 [265 P.2d 904].) As noted, a person assuming a risk must have both knowledge and appreciation of the danger involved. (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 162 [265 P.2d 904] ; *Hawk* v. *City of Newport Beach*, 46 Cal.2d 213, 218 [293 P.2d 48].) Where the facts are such that the plaintiff must have known of the dangerous condition and appreciated the hazard involved the situation is equivalent to actual knowledge. (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 162 [265 P.2d 904] ; *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 235 [282 P.2d 69].)

Appellant Anderson claims that Timothy knew he must have a secure footing on the handrails; knew he must have push and leverage to clear the deck; and knew that if he did not clear the deck he would be injured. The testimony supports these contentions. It is argued, therefore, that Timothy assumed the risk of injury arising from any insecure footing or a lack of push or leverage. However, from the evidence the jury was entitled to find that, prior to his attempted dive, Timothy did not have knowledge of his insecure footing or lack of push and leverage, or knowledge of facts which the jury could have found were the cause of such insecure footing

or lack of push and leverage. Stated otherwise, Timothy did not have knowledge of the defective condition attributable to Anderson's negligence.

It also is contended that Timothy fell because his feet or the pipes upon which he was standing were wet and that he slipped as a result of this condition, which was a risk he assumed. At one place in his testimony he stated: ". . . I started to dive and I didn't get any leverage and my foot slipped and in a way it wouldn't have made any difference, I didn't get any leverage." It is apparent from the whole record that whatever action was described by the term "slipped," as used in this testimony, was a matter for determination by the jury and that whether such slipping action, or the lack of push or leverage were attributable to a defective, "wobbly," loose condition of the diving apparatus, or to some other cause, such as wet feet or wet pipes, also was a matter for determination by the jury.

In addition to knowledge of the condition creating the risk which it is claimed is assumed, an "appreciation of the magnitude of that risk" is a vital element of the defense and, under the circumstances of this case, it was a question for the jury to determine whether Timothy appreciated the magnitude of any known danger attendant upon his dive. (*Hawk v. City of Newport Beach*, 46 Cal.2d 213, 218 [293 P.2d 48].)

Appellant Anderson presents many other aspects of the doctrine of assumption of risk and argues their applicability to this case as a matter of law, but these are immaterial under the implied finding of the jury that Timothy did not have knowledge or an appreciation of the magnitude of the danger which caused his injury.

"The defenses of assumption of risk and contributory negligence are based on different theories. Contributory negligence arises from a lack of due care." (*Prescott v. Ralphs Grocery Co.*, 42 Cal.2d 158, 161 [265 P.2d 904].) "The issue of contributory negligence is ordinarily a question of fact for the jury. The barring of a plaintiff on the ground that he has been guilty of contributory negligence, as a matter of law, is justified only under unusual circumstances (*Anthony v. Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826].) ; and in dealing with minors a much more lenient rule is applied." (*Hawk v. City of Newport Beach*, 46 Cal.2d 213, 218 [293 P.2d 48].) As a general rule "whether a minor is of sufficient age and capacity to realize and appreciate the risk of injury to which he is exposing himself is a question of fact for the

determination of the trier of fact, taking into consideration the usual thoughtlessness, carelessness and lack of discretion in children, their childish instincts, impulses and propensities, together with all the circumstances in a particular case." (*Hines* v. *Milosivich*, 68 Cal.App.2d 520, 522 [157 P.2d 45].)

"The care which a child is required to exercise is only that degree of care which children of his maturity and capacity under similar circumstances ordinarily exercise, and this, except in a case where there can be no doubt under the evidence that the child not only knew but at the time realized and appreciated the danger of his conduct, is to be determined from the circumstances of the particular case in which his conduct is involved and under the evidence there presented to the jury." (*Cahill* v. *E. B. & A. L. Stone Co.*, 167 Cal. 126, 139 [138 P. 712].) The defendant Anderson claims that, in the exercise of ordinary care, Timothy should have discovered the danger which resulted in his injury. A similar contention was raised in *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 385 [240 P.2d 580], where the court concluded that the jury could have found that the plaintiff "was not aware of the hazard and did not act unreasonably in assuming that there was nothing of a dangerous character on the premises." The situation presented by the facts in the instant case is analogous. "Knowledge that danger exists is not knowledge of the amount of danger necessary to charge a person with negligence in assuming the risk caused by such danger. The doing of an act with appreciation of the *amount* of danger in addition to mere appreciation of the danger is necessary in order to say as a matter of law that a person is negligent." (*Ridge* v. *Boulder Creek, etc. School District*, 60 Cal.App.2d 453, 460 [140 P.2d 990] ; *Cahill* v. *E. B. & A. L. Stone Co.*, 167 Cal. 126, 138 [138 P. 712].) Moreover, knowledge of the existence of a danger under circumstances where it might bar an adult from recovery does not, as a matter of law, always or in every case, bar a child. (*Ross* v. *San Francisco Unified School District*, 120 Cal.App.2d 185, 192 [260 P.2d 663].) Youngsters are inclined to be impulsive, heedless and forgetful. These inclinations are to be considered in determining the amount of care required of a child. (*Guyer* v. *Sterling Laundry Co.*, 171 Cal. 761, 763 [154 P. 1057] ; *Andre* v. *Allynn*, 84 Cal.App.2d 347 [190 P.2d 949].) Whether Timothy's conduct comported with the care and prudence due from a child of his age, experience and in-

telligence under the circumstances of this case, was a question for the jury to determine.

Appellant Anderson also contends that the trial court erred in refusing to permit the introduction of evidence which he claims would prove that Timothy had a warning of danger and that such proof was pertinent to the issue of knowledge.

A young girl named Patricia was called as a witness by the defendant Anderson, and testified that she and others were on the beach when Timothy was on the handrails of the high-diving platform. Upon being asked whether a boy in the group, named Keenan, had made a "yell" at Timothy or had said something, an objection to the question was made and sustained. Thereafter the attorney for Mr. Anderson stated that he wished to make an offer of proof and said: "I expect to show by this young lady that while Tim was up on the diving platform and while all the children were watching him, Keenan was standing with them and he yelled and then he said, 'Tim, don't do that, you will never make it,' and that this was done before Tim dived and that if she were asked the question, 'You did hear Keenan Behrle and John Harkins both screaming at him very loudly,' that she would say, 'Yes,' and I think she is answering truthfully and that also as to the ability of Keenan to project his voice to where Timothy could hear it she would testify that he has a deep voice and his voice carries." Thereafter, and as part of the offer of proof, in a commendable demonstration of good faith, the attorney made this statement: "I would like to say one further thing, I don't know whether she is going to answer, what her answer is going to be, but I think if she is truthful she will give the same answer (as in a statement previously taken from her) and it may be I will have to impeach her on the ground of surprise." The attorney for plaintiffs objected "to this as incompetent, irrelevant, immaterial, no proper foundation laid."

At the time of this offer the evidence showed that Keenan was on the beach; the float was anchored approximately 100 feet offshore; a great number of young people were in the immediate area, some on the beach, some in the water, and some on the float, and there was a lot of noise, yelling and splashing in the water; that Patricia saw a boy named John Harkins, who was in the water at the bottom of the float, cup his hands to his mouth as if to yell at Tim, but she did not hear what he yelled; that Timothy did not hear anyone

yell at him and neither did the boy who was observing him from a lower level. In *Bresee* v. *Los Angeles Traction Co.*, 149 Cal. 131, 136 [85 P. 152, 5 L.R.A. N.S. 1059], the court said:

"When the negligence of a person upon a particular occasion is in issue, it is usually, if not always, permissible to prove every fact, *known to such person at the time,* which would have a reasonable tendency to increase or decrease the risk and danger of a particular course of action." (Italics ours.)

 Proof of knowledge of a material fact may be established in various ways. "It may be evidenced by the affirmative statement or admission of the possessor of it. If he is silent or says he did not have such knowledge, it may be evidenced in other ways, e.g., by his conduct or by proof that the information was given him in writing and he read the document, or orally and he heard the statement made." (*Oil Workers Intl. Union* v. *Superior Court,* 103 Cal.App.2d 512, 533 [230 P.2d 71].)

 If it be assumed that Patricia would have testified that Keenan had yelled, "Tim, don't do that, you will never make it," this testimony was not material unless the jury could have determined that Timothy must have heard this yell. This latter fact was foundational to the materiality of the question and the trial court was entitled to require the presentation of substantial evidence upon the fact of knowledge before permitting the question to be answered. Whether foundational evidence is of such substantiality as will support a finding of a foundational fact is a matter which lies within the legal discretion of the trial judge and his decision will not be overruled on appeal unless it constitutes an abuse of that discretion. The record in this case does not justify a finding of such abuse. The trial court was entitled to conclude that Timothy would not have heard Keenan's yell from such a distance above the noise then present, and that the jury legally could not have found to the contrary. A similar problem is presented in those instances where the court is authorized and required, preliminary to the introduction of evidence, to pass upon the qualifications of a witness to testify as an expert (*Pfingsten* v. *Westenhaver,* 39 Cal.2d 12, 20 [244 P.2d 395]; *People* v. *Haeussler,* 41 Cal.2d 252, 261 [260 P.2d 8]), or the similarity of conditions foundational to the presentation of testimony based on experiments. (*Beresford* v. *Pacific Gas & Elec. Co.,* 45 Cal.2d 738, 748 [290 P.2d 498, 54 A.L.R.2d 910].)

The judgment in favor of the plaintiff and against the defendant Anderson should be affirmed.

The plaintiffs, in support of their appeal against the defendants Trautwein, contend that the court erred in giving and refusing to give certain instructions. They proposed an instruction which the trial court modified. As proposed, the instruction read:

"A repairman called to perform a job on public or semi-public premises, such as the float and diving apparatus in question here, and who, by his actions creates or contributes to a dangerous condition thereon, owes a duty to exercise ordinary care to protect members of the public and invitees of his employer who he knows, or in the exercise of ordinary care should know, may come in contact with the dangerous condition. In this connection a repairman who knows that children will use the device or apparatus upon which a condition exists which renders its use dangerous to children, must, to escape a charge of negligence, do whatever is reasonably necessary to protect said children from injury from the danger, having in mind that children are oft times thoughtless, impulsive and prone to ignore danger."

It will be noted that the last sentence of this proposed instruction refers to a dangerous condition regardless of its origin and imposes a duty upon the repairman even though that condition was not a result of his action.

The trial court modified the proposed instruction to read as follows:

"A repairman called to perform a job on premises such as the float and diving apparatus in question here owes a duty to exercise ordinary care to protect members of the public and invitees of the operator using the equipment from being injured by dangerous condition, if any, created by his work."

In addition to modifying the proposed instruction the court instructed the jury, in substance, that Trautwein Brothers did not have control over the diving apparatus but that it was under the exclusive control of Anderson, and that Timothy was not an invitee of Trautwein Brothers. The plaintiffs cite the giving of these instructions as error.

A review of the record does not reveal any substantial evidence supporting the conclusion that the defendants Trautwein were given any control over the float or diving apparatus prior to the accident; their position was that of a repairman asked to do a specific job; and the children using the equip-

ment were not present upon their invitation. Under these circumstances the proposed instruction, as modified, which was given by the court, adequately defined the duty of Trautwein Brothers and covered any pertinent factual situation presented by the evidence, whereas the instruction as proposed by plaintiffs pertained to a factual situation not presented by the evidence. The other instructions given by the court, to which objection is made, were in accord with the undisputed evidence.

The plaintiffs cite *Hall* v. *Barber Door Co.,* 218 Cal. 412 [23 P.2d 279], and *Donahoo* v. *Kress House Moving Corp.,* 25 Cal.2d 237 [153 P.2d 349], in support of their contentions. These cases are not in point; they consider the liability of an independent contractor for injuries to invitees on premises where work was being performed by the contractor, which injuries resulted from his negligence in the performance of such work; in each of these cases the contractor had created the condition which caused the injury. The modified instruction given by the court instructed the jury with respect to the duty of a repairman concerning a dangerous condition created by him. In other instructions the jury was clearly and correctly advised respecting the care required of children.

The Alvarados, as appellants, also contend that the trial court committed prejudicial error in giving an instruction on unavoidable accident, allegedly requested by all of the defendants.

In *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652 [320 P.2d 500], it was held that such an instruction was confusing, overemphasized the defendants' case, and that giving it constituted error. ▮ With respect to the prejudicial nature of such an error the court in that case stated, at pages 660-661: ''The determination whether, in a specific instance, the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends on all the circumstances of the case, including the evidence and the other instructions given. No precise formula can be drawn.'' ▮ In the case at bar, the instruction actually did not confuse the jurors as they rendered a verdict in favor of the plaintiffs and against the defendant Anderson. For the same reason it is apparent that the instruction did not overemphasize defendants' case. It is unlikely that the instruction on unavoidable accident influenced the jury in its consideration of the issues of negligence and proximate cause as to the defendants Trautwein

Brothers when it did not so influence the jury as to the defendant Anderson. ██ Where it appears that an erroneous instruction has not influenced the jury's verdict, the giving thereof is not reversible error. (*Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 167 [195 P.2d 416] ; *McGowan* v. *City of Los Angeles*, 100 Cal.App.2d 386, 396 [223 P.2d 862, 21 A.L.R.2d 1206].) ██ No prejudice resulted from giving the unavoidable accident instruction in this case. (*Alarid* v. *Vanier*, 50 Cal.2d 617, 625 [327 P.2d 897] ; *Grasgreen* v. *Acme Auto Parts*, 165 Cal.App.2d 680, 684 [332 P.2d 337] ; *Rayner* v. *Ramirez*, 159 Cal.App.2d 372, 377 [324 P.2d 83].)

The judgment in favor of the plaintiffs against the defendant Anderson and in favor of the defendants Trautwein Brothers against the plaintiffs is affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied Decemebr 3, 1959, and the petition of defendant and appellant for a hearing by the Supreme Court was denied December 30, 1959.