[Civ. No. 23696. First Dist., Div. Two. May 27, 1968.]

STEVEN M. CRAIN, a Minor, etc., et al., Plaintiffs and Respondents, v. ARTHUR M. SESTAK, Defendant and Appellant.

Richard A. Boyd, John E. Whiting and Cyril Viadro for Defendant and Appellant.

Killion & Hayes, Leo V. Killion and Harold R. Hayes for Plaintiffs and Respondents.

TAYLOR, J.—This action for personal injuries sustained by the minor plaintiff, Steven M. Crain (hereafter Steven), was brought by his father, John E. Crain, as guardian ad litem, and also on his own behalf for medical expenses against defendant, Arthur M. Sestak, and his employees. Steven, at the age of 12 years and 7 months, fell from a loose plank in a scaffold in a house being constructed by defendant. At the end of plaintiffs' case, the trial court denied the defense motion for a nonsuit. After the jury returned a verdict in favor of defendant, the trial court granted a new trial on the specific ground that its instruction on assumption of risk constituted an error of law.

On this appeal from the order granting the new trial, defendant Sestak contends that the order should be reversed as the court erred in denying his motion for nonsuit; and alternately, that the jury was properly instructed that Steven assumed the risk of the loose plank. Plaintiffs urge that assumption of risk was not an issue in the case because of defendant's violation of a safety order and the absence of any evidence that Steven had any knowledge of the particular risk.

· The relevant facts, many of which are not in dispute, are as follows: defendant, a licensed architect and contractor, and three of his workmen, were engaged in the construction of two houses on contiguous lots in Mill Valley; one faced on Melrose Avenue; the other, No. 307 Ferndale Avenue, across the narrow street from plaintiffs' home at No. 306 Ferndale.

Defendant himself worked chiefly on the Melrose property with apprentice carpenter Garrison, while his carpenter foreman, Lannert, and apprentice carpenter Brady worked on the Ferndale house. Whenever defendant saw children of all ages and sizes around the Melrose site, he would tell them to go away. When so instructed, they usually would not return, though on occasion they did. Lannert and Brady saw children in the vicinity of the Ferndale construction site before March 19, 1964, told them to leave, and also chased them off the lumber stacked in the street near the site. Sestak gave his employees no instructions concerning the preparation of the building sites for the evening other than to pick up the tools.

By March 19, both houses were partially complete. On the Ferndale house, the walls were up, the foundation had been poured, the subfloor built, and the carport framed in and partially decked. The topography of the lot was such that there was a 15-foot drop between the level of the street and the house itself, which was being built on piers at street level. To reach the house during construction, the workmen on the job used two 2 x 12 planks nailed together that led from the street to the door. This walkway was nailed to the bottom of the door opening to the house. Projecting from the house toward the street between the front door and the carport were joists about 4 feet apart. On the day before the accident, the workmen had placed two 8 x 10 planks across the joists at right angles to the walkway in order to create the working platforms needed for the installation of windows. The plank to the left of the door was nailed to the entryway planks, but the plank to the right of the doorway was not nailed down or secured in any way. This plank extended from the carport joists, over the joists protruding from the front of the house. Between the door frame end of the plank and the walkway to the front door there was a space about the length of a regular sized step or less.

Defendant and his workmen usually worked from about 8 a.m. to 4:30 p.m. About 5:15 p.m., Steven and a 7-year-old neighbor, Debbie Harris, stopped at the Ferndale house to look for electric outlet plugs and round wooden, tarpaper cylinders.

Steven followed Debbie over the walkway to the front door opening and went inside. After looking around for a while, Steven went out the door opening and walked the length of the plank to the right of the doorway to the window. He then turned around and walked back toward the front door. As he got to the end of the plank, it went down and the other end went up like a teeter-totter. Steven and the plank fell the 15 feet to the ground below, and Steven sustained the injuries that are the subject of this action.[1] The next morning, the plank and some bloodstains were found on the ground below the right side of the front door. At the time of the accident, Steven was 12 years and 7 months old. He was a normal boy of average intelligence and activity and not unusually mischievous.

As Steven was admittedly a trespasser on the property, the case was submitted to the jury pursuant to section 339 of the Restatement of Torts, commonly known as the attractive nuisance doctrine.[2]

The applicable principles as set forth in the amended edition of the Restatement of Torts, section 339, provide: "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise

---

[1] As no contentions on this appeal are related to the nature and extent of Steven's injuries nor the amount of damages claimed, we have omitted all of the testimony relating thereto.

[2] The instruction that plaintiffs offered and the trial court gave was apparently based on the first edition of the Restatement of Torts as the instant case was tried in 1965, prior to *O'Keefe* v. *South End Rowing Club*, 64 Cal.2d 729 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R.3d 1]. The *O'Keefe* case established that the slightly modified and substantially similar provision presently found in the second edition of the Restatement of Torts is presently the applicable law in this state. Accordingly, on this appeal, we rely on the revised version of the Second Restatement of Torts.

to protect the children.'' ■ Defendant contends that his motion for a nonsuit should have been granted as there was no evidence to meet the requirements of clauses (a) and (b) of section 339.

As to clause (a), defendant argues that he did not know or have reason to know that children were likely to trespass on the Ferndale property. We cannot agree. It is readily apparent from the statement of facts above that defendant was aware of the fact that children were in the neighborhood and likely to trespass. Sestak and his workmen had observed children around both construction sites and chased them away. Although there is no direct evidence that the children had crossed the walkway that led into the Ferndale house and climbed around, defendant testified that he was aware of the possibility of children playing on the construction site and that this was likely to happen, particularly after he and his workmen left for the day. Thus, he knew the children in the neighborhood were likely to come on the building site. In discussing the precautions taken to keep children off the premises, he indicated that he tries to keep them out when the building is enclosed, but ''before that time it isn't very fruitful.'' There is no question that there was evidence to satisfy the requirements of clause (a) of section 339.

■ As to clause (b), defendant argues that he had no reason to know that the loose plank constituted an unreasonable risk of harm to a boy of Steven's age. Defendant, citing *Garcia* v. *Soogian,* 52 Cal.2d 107 [338 P.2d 433], and *O'Keefe* v. *South End Rowing Club, supra,* argues that he cannot be held to a knowledge that a boy of Steven's age would fail to recognize the danger of walking on the plank.

In *Garcia,* the Supreme Court held, as a matter of law, that a normal child of 12 would appreciate the danger of jumping over a pile of building materials and thus the case was not within the rule of section 339. Although the particular holding of *Garcia* would appear to favor defendant's position here, the case was among the first to relax the prior inflexible attractive nuisance rules that classified particular conditions as attractive nuisances and eliminated others such as building materials. The rule announced in *Garcia* was that each case must be judged in the light of its own peculiar facts according to the condition laid down by section 339 of the Restatement of Torts.

In *O'Keefe,* the Supreme Court affirmed a nonsuit as to a 15½-year-old boy who knew he was diving into shallow water.

The court pointed out at page 741 that the attractive nuisance doctrine imposes on the possessor of land only " 'a limited obligation to the child, falling short of a duty to prevent all foreseeable harm to him, but requiring reasonable care as to those conditions against which he may be expected to be unable to protect himself.' " It was noted that whether or not such an obligation or duty should be imposed on the possessor depends on a number of variable factors and that the question of liability must be decided in the light of the circumstances and not by arbitrarily placing cases in rigid categories on the basis of the type of condition involved, without giving due consideration to the effect of all of the factors in a particular situation. The court then continued that the age of the minor was a most obvious and significant fact, noting at page 744: " 'What might constitute an attractive nuisance to a 7-year-old child would be immaterial as applied to a 14-year-old high school student.' "

Here, the uncontroverted evidence, admitted for the limited purpose of establishing defendant's knowledge of the danger, indicates that the loose plank in question was a defective scaffold,[3] in violation of Industrial Safety Order No. 1640, set forth in the footnote below.[4] In *Helguera* v. *Cirone*, 178 Cal.App.2d 232 [3 Cal.Rptr. 64], we held that an allegation that a scaffolding was defective was sufficient to state a cause of action under section 339 of the Restatement as to a 7-year-old minor. We said at page 238: "The maintenance of a defective and loose walking platform on a scaffolding upon which children may reasonably be expected to climb adds a hazard which could readily be remedied at slight expense thus satisfying condition 4 of section 339 of the Restatement. It also makes it much easier to satisfy condition 3 since a child who might appreciate the ordinary danger of falling from a properly constructed scaffold could not, any more than an adult workman using the same scaffold, anticipate a danger of falling which arose only from the scaffold's faulty construction."

Thus, we are here faced with the question of whether the ruling in *Helguera* is applicable or whether the age of Steven,

---

[3] All parties conceded at the trial that the loose plank in question, as well as the nailed walkway to the front door, constituted a scaffold.

[4] "1640. Scaffolds, General Requirements. (a) Scaffolds shall be provided for all work that cannot be done safely by workmen standing on permanent or solid construction, except where such work can be safely done from ladders.

"(b) Scaffolds may be constructed of wood or other suitable materials

12 years and 7 months, is sufficient to invoke the ruling in *O'Keefe,* ██ As the weight of authority in this country tends to make the attractive nuisance doctrine available to minors under 14 but less so as they grow older (see cases collected in 16 A.L.R.3d 25 at pp. 158-261), we think the best approach in the instant case is to follow our holding in *Helguera.* We rule, therefore, that under the circumstances of this case, the violation of the safety order constituted sufficient evidence to satisfy the requirement of clause (b) of section 339. We conclude that the motion for a nonsuit was properly denied and the matter submitted to the jury pursuant to section 339 of the Restatement of Torts.

We now turn to the major contention on appeal concerning the propriety of the instructions relating to assumption of risk. We note at the outset that the instructions given (quoted in the footnote below)[5] were in the form found in 2 BAJI, Revised, 207 and 207-D, incorporating the limitations imposed on the doctrine of *Shahinian* v. *McCormick,* 59 Cal.2d 554 [30 Cal.Rptr. 521, 381 P.2d 377], and *Vierra* v. *Fifth Ave. Rental Service,* 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777].

██ Plaintiffs contend that assumption of risk is not available as a defense because the loose plank violated the Industrial Safety Order, and that the trial court erred in

such as steel or aluminum members of known strength characteristics. Where materials other than wood are used, or where scaffold designs differ from those specified in these orders, the scaffold and its parts must provide a degree of strength, rigidity and safety equivalent to that provided by the described scaffold it replaces. *Anchorage and bracing shall be such that scaffolds and falsework will be prevented from swaying, tipping or collapsing. . . .*

"(j) Prohibited Types of Scaffolds. Lean-to or jack scaffolds, shore scaffolds, nailed brackets, loose tile, loose brick, loose block, *or other similar unstable objects shall not be used as working platforms, or for the support of such platforms.*" (Italics added.)

[5]"One of the issues to be determined in this case is whether the child plaintiff, Steven Crain, assumed the risk of the platform board tipping or collapsing while he was on it, which conduct plaintiff alleges caused the harm of which he here complains. If the plaintiff Steven Crain assumed such risk, he may not recover for any such harm suffered by him.

"In order for the plaintiff Steven Crain to have assumed such risk, he must have had actual knowledge of the particular danger and an appreciation of the risk involved and the magnitude thereof, and must thereafter have voluntarily assumed such risk.

"For a person to act voluntarily, he must have freedom of choice. This freedom of choice must come from circumstances that provide him a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose himself to the danger in question.

"The assumption of risk is an affirmative defense and the burden rests upon the defendant to establish by a preponderance of the evidence that the plaintiff assumed the risk as claimed herein.

"In determining whether or not a person had actual knowledge and

refusing their proffered instructions 14 and 15, set forth below.[6]

■ The violation of a safety order or statute is actionable negligence only as to those persons for whose benefit or protection it was enacted (*Nunneley* v. *Edgar Hotel,* 36 Cal.2d 493, 497 [225 P.2d 497]; *Routh* v. *Quinn,* 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215]). ■ Here, the order, by its terms, was peculiarly designed to protect employees and not members of the general public. The cases cited by plaintiffs are clearly distinguishable: in *Courtell* v. *McEachen,* 51 Cal.2d 448 [334 P.2d 870], the county ordinance in question preventing open, unattended fires was clearly for the protection of the general public; in *Gaw* v. *McKanna,* 228 Cal.App. 2d 348 [39 Cal.Rptr. 428], plaintiff, an insurance inspector, was a business invitee on the premises to which the safety order applied, and the defendant was held liable as plaintiff's statutory employer; in *Langazo* v. *San Joaquin Light & Power Corp.,* 32 Cal.App.2d 678 [90 P.2d 825], the plaintiff was not a trespasser but the owner of the land over which the railroad had a right-of-way, and the defendant's violation of a Railroad Commission order relating to sagging wires specifically stated that it was for the protection of the public as well as employees.

Here, Steven was a trespasser on a part of the property not open to the public or used by anyone except employees. The safety order applied only to workmen. As Steven was not a

appreciation of a particular danger and the magnitude thereof, and whether such knowledge and appreciation—whether with such knowledge and appreciation he voluntarily assented to or assumed the risk involved therein so as to bar recovery by him of damages for injury, you may consider his age, intelligence, experience and capacity along with all the other surrounding circumstances as shown by the evidence.

"When we are concerned with a question as to the possible knowledge that may have existed in the mind of another person at a certain time, we must of necessity look to the indirect evidence, and we may draw from that evidence whatever inferences our judgment directs to be reasonable."

[6]Plaintiffs' Instruction No. 14. "If you find from the evidence, that defendant violated any of the provisions of the safety regulation just read to you, and that any such violation was a proximate cause of plaintiff's injury, then you are instructed that plaintiff did not assume the risk of harm created by such violation."

Plaintiffs' Instruction No. 15. "If you find that the minor plaintiff was, himself, exercising ordinary care, you are instructed that he had a right to assume that every other person would perform his duty and obey the law, and in the absence of reasonable cause for thinking otherwise, it is not negligence for such minor child to assume that he was not exposed to a danger which could come to him only from a violation of law or duty by the defendant or his employees."

member of the class to be protected and defendant owed him no statutory duty, the violation of the safety order would not, in itself, preclude the defense of assumption of risk (*Akins* v. *County of Sonoma*, 67 Cal.2d 185, 193-194 [60 Cal.Rptr. 499, 430 P.2d 57]; *Hyde* v. *Avalon Air Transport, Inc.*, 243 Cal. App.2d 88, 92 [52 Cal.Rptr. 309]).

▉ Defendant argues that assumption of risk is applicable here as there was evidence from which the jury could properly infer that Steven had actual knowledge that the plank was insecure. We cannot agree. ▉ The doctrine of assumption of risk is, of course, an affirmative and limited defense. It applies only when the accident arises from a danger known to the victim before the accident, and where the evidence shows that the victim voluntarily chose to enter or to remain in the zone of known danger. Actual, and not merely constructive, knowledge of the danger is required. ▉ The doctrine is to be distinguished from contributory negligence although the two may arise from the same set of facts and frequently overlap. But the two doctrines are essentially different. Contributory negligence arises when the plaintiff fails to exercise due care. Assumption of risk arises regardless of the degree of care used. It is based, fundamentally, on consent. Contributory negligence is not.

▉ To warrant the application of the doctrine the evidence must show that the victim appreciated the specific danger involved. He does not assume any risk he does not know or appreciate (see generally 35 Cal.Jur.2d, Negligence, § 266, p. 814, et seq.). Stated another way, before the doctrine is applicable, the victim must have not only general knowledge of a danger, but must have knowledge of the particular danger, that is, knowledge of the magnitude of the risk involved.

The leading authority in this field, Dean William Prosser, in his book on Torts (2d ed. 1955), page 303, states the rule as follows: "The defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from *a particular risk*." (Italics added.) " 'Knowledge of the risk is the watchword of assumption of risk.' ▉ Ordinarily the plaintiff will not be taken to assume any risk of conditions or activities of which he is ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself. . . . If because of age, or lack of information or experience, he does not

comprehend the risk involved in a known situation, he will not be taken to consent to assume it. His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence." (Pp. 309-310.) (*Vierra* v. *Fifth Ave. Rental Service, supra,* 271.)

The trial court's order granting the motion for a new trial was based on the absence of any direct or circumstantial evidence that Steven actually knew that the offending board was, in fact, insecure before he proceeded to walk on it.

 Defendant relies on the following testimony elicited from Steven on cross-examination: "Q. And as you took a look at it, did you notice or did you look to see whether it was nailed down or secured in any way? A. It looked secure to me. Q. What was it that made it look secure to you? A. It just did. Q. What? A. It just looked secure. Q. Well, did you see any nails? A. I didn't notice any. Q. Did you look for any? A. No, sir. Q. Did you look for any clamps? A. Not that I remember. Q. Did you look for any wire around it or anything like that? A. I don't believe so. Q. In other words, I take it then you looked over there at L-1 and all you saw was a board laying there, is that right? A. Yes, sir. Q. And it was laying over Joists 1, 2 and 3, is that correct? A. I believe so, yes."

All the above indicates is that Steven did not look for any nails, clamps or wires and thus did not see any. His admitted failure to so investigate may have constituted contributory negligence but it was not evidence from which the jury could infer that Steven knew that the board was insecure. The fact that he was able to walk on it to the window and recognized the plank as one that men did work on, supported his assumption that the board was secure. The other facts on which defendant relies, namely, Steven's awareness of the 15-foot drop to the ground and the danger of walking on an 8-inch board, also relate to his lack of care or contributory negligence rather than his awareness of the specific risk of the loose board.

As indicated in *Vierra, supra,* and the many cases summarized therein, the plaintiff must have more than a general knowledge of danger. He must be aware of the *particular danger* and the magnitude of the risk involved, before he can be held to have assumed the risk. For example, in *Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158 [265 P.2d 904], the plaintiff slipped on a wet spot on the sidewalk. She saw that the sidewalk was wet with dirty water but was unaware of the

slippery vegetable matter therein that caused her fall; in *Griffin* v. *Irelan,* 194 Cal.App.2d 844 [15 Cal.Rptr. 306], the plaintiff slipped and fell on a wet platform from which the defendant had removed a rubber mat. Plaintiff knew the platform was slippery when wet, and did not look to see whether the mat was present. As she had no actual knowledge that the mat was removed, the assumption of risk instructions constituted prejudicial error.

Defendant, citing *Gilbert* v. *City of Los Angeles,* 249 Cal. App.2d 1006, 1010-1011 [58 Cal.Rptr. 56], argues that the actual knowledge requisite may be established by circumstantial evidence from which the knowledge of the fact in question can be reasonably inferred. In that case, however, the sidewalk defect that caused the plaintiff to fall *was huge, extending over almost the entire sidewalk.* In upholding the propriety of the assumption of risk instructions, the court, at page 1010, pointed to the following additional factors: "(1) plaintiff had been over the area some half-dozen times previously; (2) plaintiff lived approximately one-half block from the area of the accident; (3) the area was well lighted, open and obvious; (4) there were no distractions at the time. . . ." No such combination of circumstances was shown here. Steven testified that March 19 was the first time he had been on the construction site. There was no glaring defect as in *Gilbert.* Although Steven did not notice whether it was nailed or wired down, the board had the general appearance of being secure, and the fact that it was obviously for the workmen's use would lend weight to this impression.

*Alvarado* v. *Anderson,* 175 Cal.App.2d 166 [346 P.2d 73], not cited by either party, is likewise distinguishable. In *Alvarado,* the operator of a "Fun Zone" in Newport Beach, had removed a defective high diving board from the apparatus of his float; thereafter, the 13-year-old minor dove off the handrail at the back of the high diving apparatus and sustained serious injuries when he hit the float instead of the water. As the minor was aware of the absence of the diving board and the particular danger of diving off the inflexible railing, the court held that the question of assumption of risk was properly left to the jury.

Here, we are faced with the same problem as in *Hartlerode* v. *Edwardsen,* 219 Cal.App.2d 517 [33 Cal.Rptr. 346], where a defense verdict was reversed because the issue of assumption of risk was not applicable to the facts viewed in the light of *Vierra* v. *Fifth Ave. Rental Service, supra,* and similar

authorities. The court said at page 522: ''These recent decisions hold that when a case is submitted to a jury upon alternative issues or theories of defense and the doctrine of the assumption of risk is erroneously submitted as one of the issues, the error is reversible. The reason, as pointed out by the Supreme Court, lies in the reviewing court's impossible task of determining whether the jury decided the case upon the issue of assumption of risk, which should not have been submitted to it, or whether it reached its decision upon the issues of negligence or contributory negligence. That is exactly the situation we have here, and we are impelled to reverse the judgment by reason of the erroneous instruction submitting to the jury the issue of assumption of risk.''

The order granting a new trial is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 24, 1968.