[Civ. No. 29471. First Dist., Div. One. May 30, 1972.]

CLAUDE L. CAPPA, a Minor, etc., et al., Plaintiffs and Respondents, v. OSCAR C. HOLMES, INC., et al., Defendants and Appellants.

Counsel

Hauerken, St. Clair, Zappettini & Hines, Douglas & McEnhill, Douglas & Snyder, and Cyril Viadro for Defendants and Appellants.

Bocci & Modena and Daniel J. Modena for Plaintiffs and Respondents.

## Opinion

**ELKINGTON, J.**—Oscar C. Holmes, Inc., and City of San Mateo, defendants below, appeal from a judgment in favor of plaintiffs Claude L. Cappa and Angelina Bonnici.

The facts, viewed in a light most favorable to the plaintiffs (see *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805]) follow.

Oscar C. Holmes, Inc., a contractor, was constructing a multi-level parking lot covering about three blocks for the City of San Mateo. A portion of the structure was completed and open for public use; other portions were still under construction. On a Sunday afternoon plaintiff Cappa, then 16 years old, was going to a movie with another boy. They parked their car on the parking lot's second level where it was open to the public. The boys decided to take a short cut to the movie. On the same second floor level was a fence or barricade which had some openings and on or near which was a sign reading: "Danger—Construction Parking Only." They walked through the opening into an incompleted area about the size of a football field; it looked like "a large slab of concrete, just nice and level and smooth." There were no fences or railings on the edge of the area. While walking 3 or 4 feet from the edge plaintiff Cappa tripped over something, his feet went out from under him, and he went over the edge. He fell 30 or 40 feet sustaining injuries.

The judgment, entered on a jury verdict, awarded Cappa $20,000 and his mother Angelina Bonnici $1,805 for his medical expenses paid by her.

I. Defendants' principal claims of error concern the trial court's jury instruction on section 1632 of the Construction Safety Orders. (Cal. Admin. Code, tit. 8.) This safety order was prescribed by the Division of Industrial Safety of the Department of Industrial Relations, under the authority of Labor Code section 6500. The disputed instruction was in the following

language: "If surfacing provides a passageway that extends to any side of a floor where a man or material might fall, it shall be fenced on all sides by a railing and toe board. [¶] All railings, or barriers guarding floor or roof, shall be left in place until further construction provides permanent protection or an effective hazard control. Work shall be arranged so that openings are left unprotected for the least time possible during the transition from temporary to permanent safeguards."[1]

It is first contended that the safety order was intended only for the protection of workmen on the job, not for uninvited persons such as Cappa.

The basic rule with which we are concerned is easily determined. As said in *Crain* v. *Sestak,* 262 Cal.App.2d 478, 486 [68 Cal.Rptr. 849]: "The violation of a safety order or statute is actionable negligence only as to those persons for whose benefit or protection it was enacted. . . ." (See also *Vesely* v. *Sager,* 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151]; *Nunneley* v. *Edgar Hotel,* 36 Cal.2d 493, 497 [225 P.2d 497]; *Routh* v. *Quinn,* 20 Cal.2d 488, 491-492 [127 P.2d 1, 149 A.L.R. 215].)

Obviously the subject safety order was primarily intended for the benefit and protection of workmen. It has been said that industrial safety orders "might be regarded as peculiarly designed to protect employees when applied to places of employment which the public is prohibited from entering." (*Porter* v. *Montgomery Ward & Co.,* 48 Cal.2d 846, 849 [313 P.2d 854]; *Gaw* v. *McKanna,* 228 Cal.App.2d 348, 353

---

[1]The instruction paraphrased the safety order which is here set out in full:

"1632. Floor, Roof, and Wall Openings to be Guarded. (a) If sheathing or any other surfacing provides a passageway that extends to any side of a floor or roof opening through which a man or material might fall, such opening shall be covered with planks or other secure covering of adequate strength to support any load that might be placed thereon, or it shall be fenced on all sides by a railing and toeboard.

"Said covering shall be secured in place to prevent accidental removal or displacement, and it shall bear an approved pressure sensitized sign or equivalent with letters not less than 1 inch or more high, stating:

" 'Floor (Roof) Opening—Do Not Remove'

"Openings in concrete forms must be similarly safeguarded as soon as the form sheeting surrounds the opening and until the hazard is eliminated by placement of reinforcing steel or completion of permanent protection.

"(b) If any part of a runway or scaffold platform is directly above or adjacent to a floor or roof opening, the entire opening shall be completely covered with planking or other substantial material, unless the runway or scaffold is provided with a railing and toe board.

"(c) All planks, railings, or barriers guarding floor, roof, or wall openings shall be left in place until further construction provides permanent protection or an effective hazard control. Work shall be arranged so that openings are left unprotected for the least time possible during the transition from temporary to permanent safeguards. See Article 20 for other floor requirements."

[39 Cal.Rptr. 428].) But it has consistently been held, at least where the safety order does not indicate the contrary, that persons consensually on the premises to which a safety order applies also come within its protection. Thus it has been held that coming within such protection are business invitees (*Porter* v. *Montgomery Ward & Co., supra; McKeon* v. *Lissner,* 193 Cal. 297 [223 P. 965]; *Ross* v. *Kirby,* 251 Cal.App.2d 267 [59 Cal.Rptr. 601]; *Wiese* v. *Rainville,* 173 Cal.App.2d 496 [343 P.2d 643]); tenants (*Halliday* v. *Greene,* 244 Cal.App.2d 482 [53 Cal.Rptr. 267]; *Schumann* v. *C. R. Reichel Engineering Co.,* 187 Cal.App.2d 309 [9 Cal.Rptr. 486]; *Longway* v. *McCall,* 181 Cal.App.2d 723 [5 Cal.Rptr. 818]); insurance inspectors (*Gaw* v. *McKanna, supra,* 228 Cal.App.2d 348); son of employee (*Tesche* v. *Best Concrete Products, Inc.,* 160 Cal. App.2d 256 [325 P.2d 150]); delivery men (*Nungaray* v. *Pleasant Valley etc. Assn.,* 142 Cal.App.2d 653 [300 P.2d 285]; *Pierson* v. *Holly Sugar Corp.,* 107 Cal.App.2d 298 [237 P.2d 28]); and school children (*Lehmann* v. *L. A. City Board of Education,* 154 Cal.App.2d 256 [316 P.2d 55]).

We observe that safety order number 1632 neither expressly, nor by implication, limits its protection to workmen. Obviously great hazard to human beings attends unprotected sides and openings of floors of buildings under course of construction. This is recognized by the safety order itself. It seems most unlikely that its purpose was, or should be, *solely* the protection of workmen, without concern for others who might be injured by the proscribed unsafe conditions. We therefore conclude that the safety order was also designed to protect members of the public consensually on the subject premises.

More difficulty lies in the determination whether the safety order was also intended for the benefit of trespassers or uninvited persons who enter upon premises under the course of construction.

Touching upon this question is *Crain* v. *Sestak, supra,* 262 Cal.App.2d 478. There a 13-year-old boy was injured by a fall from a loose plank of a scaffold on a house under course of construction. At issue on appeal was the question whether the trial court had properly instructed the jury on "assumption of risk." This issue in turn was related to an admittedly violated safety order which provided in part (p. 484, fn. 4): "Scaffolds shall be provided *for all work* that cannot be done safely by *workmen* standing on permanent or solid construction, except where such *work* can be safely done from ladders." (Italics added.) That plain language caused the court to conclude that the safety order was intended for the benefit of workmen *alone.* It was said (pp. 486-487): "Here, the order, by its terms, was peculiarly designed to protect employees and not members of the general public. . . . [The boy] was a trespasser on a part of the prop-

erty not open to the public or used by anyone except employees. The safety order applied only to workmen. As [the boy] was not a member of the class to be protected and defendant owed him no statutory duty, the violation of the safety order would not, in itself, preclude the defense of assumption of risk . . . ."

*Crain* v. *Sestak, supra,* is clearly distinguishable from the case at bench where we have concluded the safety order was *not* designed to protect only workmen. The only other authority found dealing with the relationship of a safety order to trespassers is *Pierson* v. *Holly Sugar Corp., supra,* 107 Cal.App.2d 298. There, although the plaintiff was found to be other than a trespasser, counsel and the court seemed to assume (without discussion of the point) that if he were, the safety order would have been inapplicable.

We think the controlling authority on the question immediately before us is *Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], decided August 1968, after *Crain* v. *Sestak, supra,* and *Pierson* v. *Holly Sugar Corp., supra. Rowland* v. *Christian* abolished the law's archaic distinctions between the duty of care owed the trespasser, the licensee, and the invitee on real property. It applied *broadly* the rule that " 'All persons are required to use ordinary care to prevent others being injured as the result of their conduct.' " (P. 112.) And it was stated (p. 118): "A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty."

*Rowland* v. *Christian* impels us to hold that in the determination whether industrial safety orders apply to persons other than workmen, no distinction may be made between trespassers, licensees, and invitees.

No merit is found in defendant's incidental contention that the safety order refers to floor "openings" only and not to unprotected "sides" or "ends" of the floor. The safety order expressly provided that any unprotected "side of a floor" should be safeguarded (see fn. 1, *ante*). And "opening" means "a place or part which is open" (Webster's New Internat. Dict. (2d ed.)); it reasonably refers to the open space beyond the edge of an un-

protected floor. And it would seem unreasonable to infer an intent to protect against unprotected "holes" in a floor, but not against equally dangerous unprotected floor edges.

From the foregoing it would appear that the trial court's instructions on Industrial Safety Order Number 1632 were without error; we so hold.

II. ■ Defendants' next assignment of error is the trial court's failure to instruct on the principle of "assumption of risk."

It is clearly the law that "The defense of assumption of risk . . . is inapplicable when the action is based on a violation of a safety law intended to protect a class of which [a party] is a member. . . ." (*Eberhard* v. *Bruhn,* 13 Cal.App.3d 836, 839 [91 Cal.Rptr. 915]; and see *Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 430-431 [218 P.2d 17]; *Mezerkor* v. *Texaco, Inc.,* 226 Cal.App.2d 76, 98 [72 Cal.Rptr. 1, 639].) There was accordingly no error in the failure to so instruct.

It seems proper to point out that the jury were properly instructed on the rule of contributory negligence, a defense available even though liability would otherwise rest on violation of a safety order. (See *Mula* v. *Meyer,* 132 Cal.App.2d 279, 283-284 [282 P.2d 107].) But on this issue the jury found against defendants.

III. ■ Defendants also contend error in the trial court's refusal to reopen the trial for further evidence.

During the trial, while a building inspector was testifying, the following questions were asked and answers given.

"Q. Mr. Brown [the witness], Mr. Modena [plaintiff's attorney] was asking you about railings and barricades and scaffolding and this sort of thing, protection for the workers. Are there any rules and regulations that relate to what safeguards should be taken on particular construction jobs for the protection of workmen?

"THE WITNESS: A. Yes.

"Q. All right, and those are the Industrial Safety Orders, is that correct? A. That is correct."

Later, an industrial safety engineer of the State of California testified as follows:

"Q. For 20 years, will you explain briefly to the jury what your duties are with the State of California?

"A. We endeavor to make places of employment safe by enforcing the provisions of the Labor Code, and the Industrial Safety Orders.

"Q. [A]re all contractors in the State of California—do they come under the Industrial Safety Orders?

"A. Yes, they do."

On the afternoon of the day following the foregoing testimony all parties declared they had no further testimony or witnesses in the cause. The court declared the matter submitted and continued the cause to the following Monday for jury argument. On that day defendants asked leave to reopen the trial for further evidence. The purpose was to prove that they had in fact complied with the safety order by arranging "so that openings are left unprotected for the least time possible during the transition from temporary to permanent safeguards." (See par. (c) of safety order, fn. 1, *ante.*)

As indicated, the trial court denied the motion to reopen.

It will be seen that the question of compliance with safety orders relating to "railings and barricades" became an issue during the trial. During the taking of testimony, defendants had a full opportunity to establish compliance with such safety orders. Indeed, the witness whose testimony was offered on defendants' motion to reopen was in the courtroom, and *testified,* following the testimony which we have quoted. And no showing was made why the desired testimony was not sooner adduced, or that defendants had in any way been misled by plaintiffs.[2]

In *Gelberg* v. *Consolo,* 51 Cal.App.2d 516, 517-518 [125 P.2d 74], it is said: "The rule is established by a long line of authorities that trial courts are vested with a broad discretion in permitting parties to reopen a case for the purpose of introducing further proof, and the trial court's ruling upon a request to reopen a case will be disturbed on appeal only where there has been a clear abuse of discretion to the prejudice of the party complaining." To the same effect see: *Stewart* v. *Cox,* 55 Cal.2d 857,

---

[2]In its brief, defendant Oscar C. Holmes, Inc. states that the safety order instruction was not tendered the court until after the parties had rested. This does not appear from the record, except from the following unsworn recital of a memorandum in support of a motion for new trial filed five weeks later: "As the court will well recall, plaintiff's jury instructions were not submitted to the court until all the evidence was in. . . ." In any event such a tender at that time would seem proper as an additional proposed instruction "to the jury upon questions of law developed by the evidence and not disclosed by the pleadings. . . ." (See Code Civ. Proc., § 607a.)

865 [13 Cal.Rptr. 521, 362 P.2d 345]; *Estate of Horman,* 265 Cal.App.2d 796, 806-807 [71 Cal.Rptr. 780]; *Virtue* v. *Flynt,* 164 Cal.App.2d 480, 489 [330 P.2d 879]; *Giomi* v. *Viotti,* 144 Cal.App.2d 714, 718 [301 P.2d 597].

We observe no abuse of the trial court's broad discretion in denying defendants' motion to reopen.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.